[959 NE2d 488, 935 NYS2d 551]

ANTONI WILINSKI et al., Respondents-Appellants, v 334 EAST 92ND HOUSING DEVELOPMENT FUND CORP. et al., Appellants-Respondents.

Argued September 14, 2011; decided October 25, 2011

**POINTS OF COUNSEL**

*Gallo Vitucci & Klar*, New York City (*Yolanda L. Ayala* of counsel), for appellants-respondents. I. Defendants were entitled to summary judgment on the plaintiff's Labor Law § 241 (6) claim because Industrial Code regulation 12 NYCRR 23-3.3 (b) (3), relied upon by the plaintiff, is inapplicable to the facts of this matter. (*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494; *Mugavero v Windows by Hart, Inc.*, 69 AD3d 694; *Forschner v Jucca Co.*, 63 AD3d 996; *Messina v City of New York*, 300 AD2d 121; *Perillo v Lehigh Constr. Group, Inc.*, 17 AD3d 1136; *German v City of New York*, 14 Misc 3d 1204[A], 2006 NY Slip Op 52406[U]; *Maternik v Edgemere By-The-Sea Corp.*, 19 Misc 3d 1118[A], 2008 NY Slip Op 50763[U]; *Gonzalez v Fortway LLC*, 22 Misc 3d 1115[A], 2009 NY Slip Op 50132[U].) II. Defendants were entitled to summary judgment on the plaintiff's Labor Law § 241 (6) claim because Industrial Code regulation 12 NYCRR 23-3.3 (c), relied upon by the plaintiff, is inapplicable to the facts of this matter. (*Cardenas v One State St., LLC*, 68 AD3d 436; *Smith v New York City Hous. Auth.*, 71 AD3d 985;

*Campoverde v Bruckner Plaza Assoc., L.P.,* 50 AD3d 836; *Monroe v City of New York,* 67 AD2d 89; *Keane v Chelsea Piers, L.P.,* 16 Misc 3d 1116[A], 2007 NY Slip Op 51443[U]; *Ofri v Waldbaum, Inc.,* 285 AD2d 536; *Badzmierowski v PBAK, LLC,* 5 Misc 3d 1005[A], 2004 NY Slip Op 51207[U].)

*Law Office of Souren A. Israelyan,* New York City (*Souren A. Israelyan* of counsel), and *Slawek W. Platta, PLLC,* for respondents-appellants. I. The physically significant elevation differential between the worker and the higher level of the plumbing pipes that fell on him and the lack of any safety devices to secure the pipes from falling on laborers working in the area, brings this accident within the purview of Labor Law § 240 (1). (*Rocovich v Consolidated Edison Co.,* 78 NY2d 509; *Ross v Curtis-Palmer Hydro-Elec. Co.,* 81 NY2d 494; *Runner v New York Stock Exch., Inc.,* 13 NY3d 599; *Misseritti v Mark IV Constr. Co.,* 86 NY2d 487; *Portillo v Roby Anne Dev., LLC,* 32 AD3d 421; *Tylutki v Tishman Tech.,* 7 AD3d 696, 3 NY3d 702; *Brown v VJB Constr. Corp.,* 50 AD3d 373; *Sharp v Scandic Wall Ltd. Partnership,* 306 AD2d 39; *Gordon v Eastern Ry. Supply,* 82 NY2d 555; *Zimmer v Chemung County Performing Arts,* 65 NY2d 513.) II. The courts below correctly construed 12 NYCRR 23-3.3 (b) (3) according to its plain meaning and purpose. (*Perillo v Lehigh Constr. Group, Inc.,* 17 AD3d 1136; *Sierzputowski v City of New York,* 14 AD3d 606; *German v City of New York,* 14 Misc 3d 1204[A], 2006 NY Slip Op 52406[U]; *Maternik v Edgemere By-The-Sea Corp.,* 19 Misc 3d 1118[A], 2008 NY Slip Op 50763[U]; *Gonzalez v Fortway LLC,* 22 Misc 3d 1115[A], 2009 NY Slip Op 50132[U]; *Docteur v Belleville-Henderson Cent. School Dist.,* 307 AD2d 751.) III. Defendants failed to meet their burden as summary judgment movants to establish as a matter of law that they have complied with the standard of care under 12 NYCRR 23-3.3 (c). (*Salinas v Barney Skanska Constr. Co.,* 2 AD3d 619; *Monroe v City of New York,* 67 AD2d 89; *Balladares v Southgate Owners Corp.,* 40 AD3d 667; *Cardenas v One State St., LLC,* 68 AD3d 436; *Perillo v Lehigh Constr. Group, Inc.,* 17 AD3d 1136; *Sierzputowski v City of New York,* 14 AD3d 606; *Gawel v Consolidated Edison Co. of N.Y.,* 237 AD2d 138; *Smith v New York City Hous. Auth.,* 71 AD3d 985; *Campoverde v Bruckner Plaza Assoc., L.P.,* 50 AD3d 836.)

**OPINION OF THE COURT**

Ciparick, J.

Some New York courts have interpreted our decision in *Misseritti v Mark IV Constr. Co.* (86 NY2d 487 [1995]) to preclude

recovery under Labor Law § 240 (1) where a worker sustains an injury caused by a falling object whose base stands at the same level as the worker. We reject that interpretation and hold that such a circumstance does not categorically bar the worker from recovery under section 240 (1). However, in this case, an issue of fact exists as to whether the worker's injury resulted from the lack of a statutorily prescribed protective device.

## I.

On September 28, 2005, at approximately 8:30 A.M., plaintiff Antoni Wilinski[1] and other workers were demolishing brick walls at a vacant warehouse located on premises owned by defendant 334 East 92nd Housing Development Fund Corp.[2] Previous demolition of the ceiling and floor above had left two metal, vertical plumbing pipes unsecured. The pipes were each four inches in diameter and rose out of the floor on which plaintiff was working to a height of approximately 10 feet.[3] The pipes were to be left standing until their eventual removal. Earlier that morning, plaintiff voiced concerns to his supervisor that leaving the pipes standing during demolition of the surrounding walls could be dangerous. Nevertheless, no safety measures were taken to secure the pipes. Shortly thereafter, debris from a nearby wall that was being demolished hit the pipes, causing them to topple over. The pipes fell approximately four feet and landed on plaintiff, who is five feet, eight inches tall. The first pipe knocked plaintiff's hard hat off from his head, then struck his right shoulder and arm, cutting his elbow. The second pipe struck plaintiff's uncovered head, cutting it and causing a concussion. Plaintiff suffered serious and lasting injuries to his shoulder, arm and spine, as well as neuropsychological injuries.

Plaintiff commenced suit alleging violations of Labor Law § 240 (1) and Labor Law § 241 (6), the latter pursuant to 12

---

**1.** Halina Wilinski is also a plaintiff, having sued derivatively. We will refer only to the injured worker as plaintiff.

**2.** Defendant 334 East 92nd Housing Development Fund Corp., (the HDFC) owned the premises located at 334 East 92nd Street in Manhattan. The HDFC executed a nominee agreement in favor of defendant East 92nd Street Senior Housing Limited Partnership, which, in turn, retained defendant Empire Developers Corp. (Empire) as general contractor. Empire hired Gramercy Group, Inc. (Gramercy) as subcontractor to demolish a vacant warehouse on the property. Gramercy employed plaintiff as a demolition worker.

**3.** In his deposition testimony, plaintiff stated that the pipes were two different heights, the shorter ranging from 8 to 10 feet and the taller ranging from 10 to 12 feet. Plaintiff's coworker testified that he did not want to estimate the height of the pipes but stated that "they went up a good way."

NYCRR 23-3.3 (b) (3) and (c). Plaintiff moved for summary judgment on his section 240 (1) claim and defendants cross-moved for summary judgment seeking dismissal of plaintiff's claims. Supreme Court granted plaintiff's motion for summary judgment and denied defendants' motion in its entirety (2009 NY Slip Op 30605[U] [2009]). The court held that plaintiff suffered a gravity-related injury and had established entitlement to judgment as a matter of law by demonstrating that the absence of a statutorily enumerated safety device proximately caused his injury. The court also held that defendants were subject to duties under 12 NYCRR 23-3.3 (b) (3) and (c), which provided a sufficient predicate for liability under Labor Law § 241 (6).

The Appellate Division modified the order of Supreme Court by denying plaintiff's motion for summary judgment and by partially granting defendants' summary judgment motion to the extent of dismissing plaintiff's section 240 (1) claim (*Wilinski v 334 E. 92nd Hous. Dev. Fund Corp.*, 71 AD3d 538, 539 [1st Dept 2010]). Relying on our decision in *Misseritti*, the court stated that the accident was "not the type of elevation-related accident that [the statute] is intended to guard against . . . Since both the pipes and plaintiff were at the same level at the time of the collapse the incident was not sufficiently attributable to elevation differentials to warrant imposition of liability" (*id.* [internal quotation marks omitted]). The court otherwise affirmed Supreme Court's denial of defendants' motion to dismiss plaintiff's section 241 (6) claims (*see id.*).

The parties each moved at the Appellate Division for leave to appeal to this Court. In separate orders granting those motions, the Appellate Division certified the following question: "Was the order of this Court, which modified the order of the Supreme Court, properly made?" For the reasons that follow, we modify the court's order and answer in the negative.

## II.

### Plaintiff's Labor Law § 240 (1) Claim

Labor Law § 240 (1) mandates that building owners and contractors

> "in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such

labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."

The statute imposes absolute liability on building owners and contractors whose failure to "provide proper protection to workers employed on a construction site" proximately causes injury to a worker (see Misseritti, 86 NY2d at 490). Whether a plaintiff is entitled to recovery under Labor Law § 240 (1) requires a determination of whether the injury sustained is the type of elevation-related hazard to which the statute applies (see Rocovich v Consolidated Edison Co., 78 NY2d 509, 513 [1991] ["violation of the statute cannot establish liability if the statute is intended to protect against a particular hazard, and a hazard of a different kind is the occasion of the injury" (internal quotation marks omitted)]).

Our jurisprudence defining the category of injuries that warrant the special protection of Labor Law § 240 (1) has evolved over the last two decades, centering around a core premise: that a defendant's failure to provide workers with adequate protection from reasonably preventable, gravity-related accidents will result in liability. Beginning in Rocovich, we stated that section 240 (1)'s contemplated hazards are

"those related to the effects of gravity where protective devices are called for either because of a difference between the elevation level of the required work and a lower level or a difference between the elevation level where the worker is positioned and the higher level of the materials or load being hoisted or secured" (78 NY2d at 514).

In Rocovich, the plaintiff was injured at his work site when his right ankle and foot accidentally became immersed in hot oil in a 12-inch-deep trough (see id. at 511). We denied recovery, finding it "difficult to imagine how plaintiff's proximity to the 12-inch trough could have entailed an elevation-related risk which called for any of the protective devices of the types listed in section 240 (1)" (id. at 514-515). Subsequently, in Ross v Curtis-Palmer Hydro-Elec. Co. (81 NY2d 494 [1993]), we refined Rocovich, stating that the reach of Labor Law § 240 (1) is "limited to such specific gravity-related accidents as [a worker] falling from a height or being struck by a falling object that was improperly hoisted or inadequately secured" (id. at 501).

In *Narducci v Manhasset Bay Assoc.* (96 NY2d 259 [2001]), though we noted that section 240 (1) applies to both "falling worker" and "falling object" cases, we declined to impose liability where a plaintiff was cut by a piece of glass that fell from a nearby window pane (*id.* at 266). We concluded that "[t]his was not a situation where a hoisting or securing device of the kind enumerated in the statute would have been necessary or even expected" and that the absence of such a device "did not cause the falling glass here" (*id.* at 268-269). Therefore, the accident was outside the scope of section 240 (1) (*see id.*).

In *Misseritti*, we applied a similar rationale. The plaintiff's decedent in that case sustained severe injuries, leading to his eventual death, when a completed, concrete firewall collapsed on top of him (*see* 86 NY2d at 489). Before the wall collapsed, "decedent and his co-worker had just dismantled the scaffolding used to erect the completed fire wall and . . . [m]asons had not yet vertically braced the wall with the . . . planks it had on the work site" (*id.* at 491). We held that section 240 (1) did not apply to those facts, as the firewall did not collapse due to a failure to provide a protective device contemplated by the statute (*see id.*). We determined that, in fact, the kind of braces referred to in section 240 (1) are "those used to support elevated work sites not braces designed to shore up or lend support to a completed structure" (*id.*). Thus the firewall's collapse, though tragic in its consequences, was simply "the type of peril a construction worker usually encounters on the job site" (*id.*).

Intermediate appellate courts have cited *Misseritti* as support for the proposition that a plaintiff injured by a falling object has no claim under section 240 (1) where the plaintiff and the base of the object stood on the same level (*see e.g. Brink v Yeshiva Univ.*, 259 AD2d 265 [1st Dept 1999] [citing *Misseritti* and holding that the collapse of an interior chimney at the same floor level as plaintiff was not attributable to elevation differentials to warrant the imposition of liability]; *Matter of Sabovic v State of New York*, 229 AD2d 586, 587 [2d Dept 1996] ["the wall which collapsed was at the same level as the work site and is not considered a falling object for purposes of Labor Law § 240 (1)"]; *Corsaro v Mt. Calvary Cemetery*, 214 AD2d 950, 950 [4th Dept 1995] [holding that a concrete form standing at ground level and estimated between 12 and 20 feet high was not a falling object because it was at the same level as the work site and not an elevation-related risk]). Here, the Appellate Division also relied on *Misseritti* in holding that the collapse of the pipes, like

the collapse of a wall, was not an elevation-related accident and stated that "[s]ince both the pipes and plaintiff were at the same level at the time of the collapse the incident was not sufficiently attributable to elevation differentials to warrant imposition of liability" under section 240 (1) (*Wilinski*, 71 AD3d at 539 [internal quotation marks omitted]). Defendants urge the Court to endorse the "same level" rule now by affirming the lower court's dismissal of plaintiff's section 240 (1) claim.

█ We do not agree that *Misseritti* calls for the categorical exclusion of injuries caused by falling objects that, at the time of the accident, were on the same level as the plaintiff. *Misseritti* did not turn on the fact that plaintiff and the base of the wall that collapsed on him were at the same level. Rather, just as in *Narducci*, the absence of a causal nexus between the worker's injury and a lack or failure of a device prescribed by section 240 (1) mandated a finding against liability (*see Misseritti*, 86 NY2d at 490-491; *Narducci*, 96 NY2d at 268-269). Thus, we decline to adopt the "same level" rule, which ignores the nuances of an appropriate section 240 (1) analysis.[4]

Moreover, the so-called "same level" rule is inconsistent with this Court's more recent decisions, namely *Quattrocchi v F.J. Sciame Constr. Corp.* (11 NY3d 757 [2008]) and *Runner v New York Stock Exch., Inc.* (13 NY3d 599 [2009]), neither of which are cited by the dissent. In *Quattrocchi*, we articulated for the first time that liability is not limited to cases in which the falling object was in the process of being hoisted or secured (*see* 11 NY3d at 759). Next, in *Runner*, the Court had occasion to apply section 240 (1) to novel factual circumstances that did not involve a falling worker or falling object (*see* 13 NY3d at 605).

---

4. Some lower courts have already reached this conclusion. For example, in *Brown v VJB Constr. Corp.* (50 AD3d 373 [1st Dept 2008]), the plaintiff was injured when a 1,000 pound slab that fell from a defective clamp as it was being hoisted by a forklift landed at ground level and then tipped over, pinning the plaintiff's wrist between the slab and a wall (*see id.* at 374). Defendants had argued, based on *Misseritti*, that because the "[plaintiff] admit[ted] that at the time of the accident, he worked at the same level as the stone panel being installed" the court should affirm the dismissal of plaintiff's section 240 (1) claim (*see* brief for defendant-respondent and second third-party defendant-respondent in *Brown v VJB Constr. Corp*, 50 AD3d 373 [2008], available at 2007 WL 5830407, *14-18). The Appellate Division aptly rejected that argument, finding it "of no consequence that the ultimate destination of the slab was the same level where the forklift was positioned, or where [the] plaintiff was standing" (*Brown*, 50 AD3d at 377). Had the court accepted the defendants' same level defense, mere circumstance would have arbitrarily precluded what we agree was clearly a viable claim under section 240 (1).

In *Runner*, the plaintiff was injured while he and coworkers moved an 800 pound reel of wire down a flight of four stairs (*see id.* at 602). The workers were instructed to tie one end of a 10-foot length of rope to the reel and then to wrap the rope around a metal bar placed horizontally across a door jamb on the same level as the reel (*see id.*). The plaintiff, acting as a counterweight, held the loose end as other workers pushed the reel down stairs (*see id.*). As the reel descended, the plaintiff was pulled horizontally into the bar, injuring his hands as they jammed against it (*see id.*). After a review of our precedents, we concluded that

> "the dispositive inquiry framed by our cases does not depend upon the precise characterization of the device employed or upon whether the injury resulted from a fall, either of the worker or of an object upon the worker. Rather, *the single decisive question is whether plaintiff's injuries were the direct consequence of a failure to provide adequate protection against a risk arising from a physically significant elevation differential*" (*id.* at 603 [emphasis added]).

As the "elevation differential . . . [could not] be viewed as de minimis, particularly given the weight of the object and the amount of force it was capable of generating, even over the course of a relatively short descent" (*id.* at 605), we held the defendants liable under Labor Law § 240 (1) for using a "jerry-rigged device" rather than hoists or pulleys as provided under the statute (*see id.* at 602, 605).

■ Applying *Runner* to the instant case, we hold that plaintiff is not precluded from recovery under section 240 (1) simply because he and the pipes that struck him were on the same level. The pipes, which were metal and four inches in diameter, stood at approximately 10 feet and toppled over to fall at least four feet before striking plaintiff, who is five feet, eight inches tall. That height differential cannot be described as de minimis given the "amount of force [the pipes] w[ere] [ ]able [to] generat[e]" (*id.* at 605) over their descent. Thus, plaintiff suffered harm that "flow[ed] directly from the application of the force of gravity to the [pipes]" (*id.* at 604; *see also Rocovich*, 78 NY2d at 514). However, though the risk here "ar[ose] from a physically significant elevation differential" (*Runner*, 13 NY3d at 603), it remains to be seen whether plaintiff's injury was "the direct consequence of [defendants'] failure to provide adequate protection against [that] risk" (*id.*).

In this regard, this case is distinguishable from *Misseritti* in a significant way: while, in *Misseritti*, the kinds of protective devices section 240 (1) prescribes were shown to be inapplicable to the circumstances of the decedent's injury, here, neither party has met its burden with respect to that issue. Plaintiff asserts, but does not demonstrate, that protective devices such as blocks or ropes could have been used to secure the pipes and prevent the accident. Defendants assert, but fail to demonstrate, that no protective devices were called for.

Moreover, there is an important distinction between the facts of this case and other cases where summary judgment has been granted in defendants' favor. Here, the pipes that caused plaintiff's injuries were not slated for demolition at the time of the accident. This stands in contrast to cases where the objects that injured the plaintiffs were themselves the target of demolition when they fell (*see e.g. Brink*, 259 AD2d at 265). In those instances, imposing liability for failure to provide protective devices to prevent the walls or objects from falling, when their fall was the goal of the work, would be illogical. Here, however, securing the pipes in place as workers demolished nearby walls would not have been contrary to the objectives of the work plan.

We conclude, therefore, that while there is a potential "causal connection between the object[s'] inadequately regulated descent and plaintiff's injury" (*Runner*, 13 NY3d at 605), neither party is entitled to summary judgment on plaintiff's Labor Law § 240 (1) claim. Whether plaintiff's injuries were proximately caused by the lack of a safety device of the kind required by the statute is an issue for a trier of fact to determine.

## III.

Plaintiff's Claims Under Labor Law § 241 (6)

Plaintiff's remaining claims arise under Labor Law § 241 (6), which provides:

> "All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places."

As the statute is not self-executing, a plaintiff must set forth a violation of a specific rule or regulation promulgated pursuant

to it (see Ross, 81 NY2d at 503). In this case, plaintiff invokes 12 NYCRR 23-3.3 (b) (3), which provides: "Walls, chimneys and other parts of any building or other structure shall not be left unguarded in such condition that such parts may fall, collapse or be weakened by wind pressure or vibration."

Defendants contend that this regulation is inapplicable to the instant matter because neither wind pressure nor vibration caused the pipes to fall, collapse or become weakened. Defendants argue that the Appellate Division's interpretation of the regulation—specifically, that "[a] fair reading of the section . . . leads to the conclusion that the phrase 'by wind pressure or vibration,' does not attach to the words 'fall' or 'collapse,' but only to the immediately preceding words, 'be weakened' " (Wilinski, 71 AD3d at 539)—is incorrect and contradicts the purpose of the regulation.

While lower courts ruling on this issue have largely adopted defendants' proposed reading of the regulation (see German v City of New York, 14 Misc 3d 1204[A], 2006 NY Slip Op 52406[U], *5 [Sup Ct, NY County 2006]; Maternik v Edgemere By-The-Sea Corp., 19 Misc 3d 1118[A], 2008 NY Slip Op 50763[U], *7 n 11 [Sup Ct, Kings County 2008]; Gonzalez v Fortway LLC, 22 Misc 3d 1115[A], 2009 NY Slip Op 50132[U], *7 [Sup Ct, Kings County 2009]), we believe that the Appellate Division's interpretation is the better one. Thus, we affirm the court's finding that plaintiff is not required to show that the pipes fell or collapsed due to wind pressure or vibration to state a claim under 12 NYCRR 23-3.3 (b) (3).

Plaintiff's second section 241 (6) claim arises under 12 NYCRR 23-3.3 (c), which provides:

"During hand demolition operations, continuing inspections shall be made by designated persons as the work progresses to detect any hazards to any person resulting from weakened or deteriorated floors or walls or from loosened material. Persons shall not be suffered or permitted to work where such hazards exist until protection has been provided by shoring, bracing or other effective means."

"The thrust of this subdivision is to fashion a safeguard, in the form of 'continuing inspections,' against hazards which are created by the progress of the demolition work" (Monroe v City of New York, 67 AD2d 89, 100 [2d Dept 1979]). Here, defendants failed to meet their burden of showing either that they complied

with the regulation or that their noncompliance did not cause plaintiff's accident. Thus, we conclude that the courts below properly denied summary judgment to defendants on plaintiff's Labor Law § 241 (6) claims.

Accordingly, the order of the Appellate Division should be modified, without costs, in accordance with this opinion and, as so modified, affirmed, and the certified questions answered in the negative.

PIGOTT, J. (dissenting in part). Because the majority runs far afield from this Court's Labor Law § 240 (1) precedent, I dissent.

To prevail on a motion for summary judgment on the issue of liability under Labor Law § 240, a plaintiff must demonstrate that his or her injuries resulted from "dangerous conditions posed by elevation differentials" at a work site (*Misseritti v Mark IV Constr. Co.*, 86 NY2d 487, 491 [1995]), and that the elevation-related risk occurred "*because of* the absence or inadequacy of a safety device of the kind enumerated in the statute" (*Narducci v Manhasset Bay Assoc.*, 96 NY2d 259, 268 [2001]).

At the time of the accident, plaintiff was demolishing the walls of a warehouse building. In front of the brick wall that plaintiff was demolishing were two metal plumbing pipes, approximately 8 to 10 feet in height stretching vertically from the floor on which plaintiff was standing. Two workers, using hammers and crowbars, demolished an adjacent wall about four feet away from plaintiff, causing that wall to collapse into the pipes. The pipes toppled onto plaintiff causing injury.

On this record, plaintiff has not demonstrated his entitlement to summary judgment because he failed to articulate either an elevation-related risk or an enumerated safety device that would have prevented his injuries. To the contrary, in my view, defendants are entitled to summary judgment since the uncontested facts establish that plaintiff's injuries were not the result of a hazard contemplated by section 240 (1).

In *Misseritti*, we ruled that the injuries sustained, caused by the collapse of a completed fire wall, were not the result of an elevation-related accident subject to the protections of section 240 (1), because the plaintiff failed to demonstrate that "the decedent was working at an elevated level at the time of his tragic accident" and it could not "be said that the collapse of a completed fire wall is the type of elevation-related accident that section 240 (1) is intended to guard against" (86 NY2d at 491).

Likewise, in *Melo v Consolidated Edison Co. of N.Y.* (92 NY2d 909 [1998]), the plaintiff and a coworker were attempting to cover a trench with a heavy steel plate, which was attached, by a chain with a hook, to the shovel of a backhoe. As the plate was being moved to the trench, its edge was resting on the ground or slightly above it. When the hook unfastened and the plate fell over, the plaintiff sustained injuries. We upheld the dismissal of the plaintiff's section 240 (1) claim, explaining that the statute was not implicated because "[t]he steel plate was not elevated above the work site" (*id.* at 911).

These principles were reinforced in *Capparelli v Zausmer Frisch Assoc., Inc.*, decided at the same time as *Narducci*, wherein the plaintiff cut his right hand and wrist when he attempted to stop a falling light fixture from hitting him while stationed halfway up a ladder. There, we concluded that the plaintiff's claim did not fall within the ambit of section 240 (1), stating that the statute does not apply when "there [is] no height differential between [the] plaintiff and the falling object" (96 NY2d at 269).

The vertical plumbing pipes in this case are akin to the completed fire wall in *Misseritti* and the steel plate in *Melo*. It is of no moment that the pipes rose at least four feet above the plaintiff's height, since it is undisputed that the base of the pipes were at the same level as plaintiff and his work site.

Nor did plaintiff demonstrate that an enumerated safety device would have prevented the accident from occurring. In his motion for summary judgment, plaintiff merely claimed that defendants failed to provide him with an enumerated safety device to adequately secure the pipes. But that's not enough. To merit summary judgment on the issue of liability under section 240 (1) plaintiffs must show that there was a specific, enumerated safety device that would have prevented the accident. Here, plaintiff offered only conclusory statements, thereby failing to demonstrate an issue of fact warranting trial.

In denying defendants' motion for summary judgment, the majority adds confusion and uncertainty to our decisions in *Misseritti*, *Narducci*, and *Melo* and to the reasonable interpretation given them by the Appellate Divisions (*see e.g. Brink v Yeshiva Univ.*, 259 AD2d 265 [1st Dept 1999]; *Matter of Sabovic v State of New York*, 229 AD2d 586, 587 [2d Dept 1996]; *Corsaro v Mt. Calvary Cemetery*, 214 AD2d 950, 950-951 [4th Dept

1995]).* I see no reason to stray from the overwhelming and settled body of case law that establishes that section 240 (1) does not apply when the base of the falling object is at the same level as the worker and the work being performed. Therefore, I would affirm the Appellate Division order.

Chief Judge LIPPMAN and Judges SMITH and JONES concur with Judge CIPARICK; Judge PIGOTT dissents and votes to affirm in a separate opinion in which Judges GRAFFEO and READ concur.

Order modified, etc.

---

* The majority cites *Brown v VJB Constr. Corp.* (50 AD3d 373 [1st Dept 2008]) as evidence that the Appellate Division has begun to reject the "same level" rule. That is not the case. The concrete slab in *Brown* fell from a height of three feet (*id.* at 376), and therefore that case does not involve a situation were the base of the object is at the same elevation as plaintiff.