■ RICHARD FABRIZI, Respondent, v 1095 AVENUE OF THE AMERICAS, L.L.C., et al., Appellants, et al., Defendants. (And Other Actions.) [951 NYS2d 480]—

Order, Supreme Court, New York County (Emily Jane Goodman, J.), entered June 9, 2011, which, to the extent appealed from, denied defendants 1095 Avenue of the Americas, L.L.C. and J.T. Magen Construction Company, Inc.'s motion for summary judgment dismissing the Labor Law § 240 (1) claim as against them, and granted plaintiff's motion for summary judgment on the issue of said defendants and defendant Dechert LLP's liability under section 240 (1), modified, on the law, to deny plaintiff's motion, and otherwise affirmed, without costs.

Plaintiff, an electrician employed by nonparty Forest Electric Corp., was working at a job site where the general contractor was gutting and remodeling a commercial space. He was injured when he was struck in the hand by a piece of galvanized steel conduit pipe. The pipe had been attached to another piece of pipe by a compression coupling at the ceiling before it fell. At the time of the accident, plaintiff was engaged in moving a pool box (also called a pencil box), a device used to access telecommunication wires. The box was connected to a section of conduit piping running from the floor to the ceiling, as well as to a support system known as Kindorf supports. After cutting the conduit to remove the pencil box, plaintiff kneeled down to drill into the floor in order to reposition the conduit and the pencil box, when the piece of conduit that was secured to the other pipe came loose and fell upon him.

Contrary to defendants' argument, adopted by Justice Tom in

his dissent (the dissent), the facts in this case are not outside the scope of Labor Law § 240 (1). Plaintiff claims that he requested and should have been provided with a set screw coupling to secure the conduit pipe to the ceiling and that defendants' failure to provide this protective device was a proximate cause of his accident. Defendants assert that in light of the Kindorf support system and compression coupling that attached the conduit to the ceiling, no protective devices were called for. However, neither of these positions was demonstrated as a matter of law. Thus, summary judgment is not warranted in favor of either side.

The dissent misconstrues plaintiff's claim when it asserts that plaintiff's theory of recovery is flawed because Labor Law § 240 (1) has no application to the type of component part that plaintiff claims his employer should have used to *assemble* the conduit system. Plaintiff does not maintain that the conduit system was assembled in an unsafe manner. Rather, plaintiff's testimony is that when directed to move the pool box, he requested a set screw coupling to secure the pipe to prevent the pipe from falling during the disassembly, and that the failure of defendants to provide this device was a proximate cause of his accident. As to the dissent's observation that it is unclear whether we adopt plaintiff's position, we find an issue of fact as to whether defendants failed to provide a protective device (*Wilinski v 334 E. 92nd Hous. Dev. Fund Corp.*, 18 NY3d 1, 11 [2011] ["whether plaintiff's injuries were proximately caused by the lack of a safety device of the kind required by statute is an issue for a trier of fact to determine"]).[1]

The dissent cites *Narducci v Manhasset Bay Assoc.* (96 NY2d 259, 268 [2001]), which states that "for section 240 (1) to apply, "[a] plaintiff must show that the object fell[ ] while being hoisted or secured." However, it is clear from another portion of that decision, as well as from subsequent case law, that section 240 (1) is not limited to that situation. The *Narducci* Court observed that "the glass that fell on plaintiff was not a material being hoisted *or a load that required securing for the purposes of the undertaking at the time it fell*" (*id.* [emphasis added]). In *Quattrocchi v F.J. Sciame Constr. Corp.* (11 NY3d 757, 758-759 [2008]), a case where plaintiff was struck by falling planks that had been placed over open doors, the Court stated outright that " 'falling object' liability under Labor Law § 240 (1) is not limited to cases in which the falling object is in the process of

---

1. Although, in concurring in the denial of plaintiff's motion for summary judgment, Justice Román focuses on the issue of foreseeability, we note that defendants did not raise that issue.

being hoisted or secured." In *Wilinski* (18 NY3d at 10), citing *Runner v New York Stock Exch., Inc.* (13 NY3d 599 [2009]), the Court held that the plaintiff was not precluded from recovery under section 240 (1) "simply because he and the pipes that struck him were on the same level."

Furthermore, the dissent's analogy to *Narducci* is inapt. In that case, the plaintiff was injured when glass fell from a window that was not being worked on during the renovation but was part of the preexisting building structure. In contrast, here, plaintiff's employer had been engaged in overhauling the building's electrical system, and at the time of the accident, plaintiff had been doing conduit work and installation of pool boxes. Following the completion of the work, the general contractor issued a change order, directing the relocation of the pool box. Thus, plaintiff was not injured by a part of the preexisting structure unrelated to the work he was performing but was injured by the apparatus that had been installed by his employer and was being relocated.

The dissent also posits two different methods by which plaintiff could have performed the work that would have eliminated any possibility that the hanging conduit would fall. However, "no evidence, expert or lay, was submitted that either of these options were appropriate" (*Cordeiro v TS Midtown Holdings, LLC*, 87 AD3d 904, 905 [2011]).[2] Concur—Moskowitz, Richter and Abdus-Salaam, JJ.

Román, J., concurs in part and dissents in part in a memorandum as follows: While I agree with the majority's position that the accident here falls within the ambit of Labor Law § 240 (1) and that questions of fact preclude summary judgment in favor of any of the parties on plaintiff's Labor Law § 240 (1) claim, I write separately in order to address foreseeability as an element in all Labor Law § 240 (1) cases, an issue whose discussion, at least in my view, is long overdue.

In cases pursuant to Labor Law § 240 (1), whether an accident falls within the ambit of the statute depends on whether the task being performed at the time of an accident exposes a worker to a gravity-related risk against which an owner or contractor must guard. Consequently, an accident falls within the ambit of Labor Law § 240 (1) only if it is reasonably foreseeable that in performing the task giving rise to the accident, a worker will be exposed to a gravity-related hazard so that he/she should be provided, at the outset, with safety devices adequate to prevent the accident.

---

**2.** Notably, defendants did not argue below that plaintiff's actions were the sole proximate cause of the accident.

On March 20, 2008, plaintiff, an electrician employed by nonparty Forest Electric Corp. (Forest), was injured while working within premises owned by defendant 1095 Avenue of the Americas, LLC (1095). 1095 leased a portion of its building to defendant Dechert, LLP (Dechert), which thereafter hired defendant Magen Construction Company, Inc. (Magen) to build out the leased space for its intended use. The build-out involved a gut and remodel of Dechert's space, and Forest was hired by Magen to overhaul the electrical system. Plaintiff's work, termed "telephone riser, conduit work," involved running galvanized steel conduit up through the building's floors. Once in place, the conduit housed telecommunication wires that emanated from the building's sub-cellar. The conduit traveled up through the building, through designated data shaftways or closets and through core cuts on each floor. As it rose through the building in separate pieces, the conduit on each floor met and abutted the conduit from the preceding and subsequent floors. Separate pieces of conduit were held together by compression couplings. The compression couplings held the conduits together by the force created by an inner ring when the couplings were tightened. On each floor, the conduit rose from the ground several feet, where it then met a "pencil box" and was attached thereto by a compression connector. The pencil box contained no conduit, thereby allowing access to the wires that would ultimately travel within the conduit. The pencil box was affixed and screwed to a vertical metal support called a Kindorf. The Kindorf resembled a giant bracket and was affixed to the concrete walls within the closet. Another piece of conduit, approximately 10 feet in length and approximately 60-80 pounds, then emanated from the top of the pencil box, was affixed thereto by another compression connector, and rose through the ceiling, through core cuts, where it then joined the conduit on the subsequent floor.

On the date of his accident, plaintiff was tasked with repositioning an already installed pencil box within a telecommunications closet on the 11th floor. Plaintiff intended to move the pencil box, which was already affixed to a conduit running from the floor below to the floor above. He unscrewed the pencil box from the Kindorf and then used a saw to make cuts in the conduit, which enabled him to unscrew and remove the pencil box. Plaintiff removed the pencil box and proceeded to drill the new holes necessary for the pencil box's relocation. As he drilled, the conduit above where the pencil box had been was still affixed to the compression coupling above. Suddenly, the conduit fell, coming loose from its compression coupling, falling on top of plaintiff's hand, and causing him injury. Before the accident,

plaintiff had requested screw couplings for purposes of performing the telephone riser, conduit work, averring that such a coupling was "safer when dealing with any kind of heavy loads." Screw couplings were never provided.

Plaintiff commenced this action, alleging a cause of action for common-law negligence and causes of action pursuant to Labor Law §§ 200, 240 (1) and 241 (6). Defendants 1095 and Magen moved for summary judgment arguing, inter alia, that plaintiff's accident did not trigger the protections of Labor Law § 240 (1) because it did not involve a gravity related-risk or hazard. Plaintiff opposed and cross-moved for partial summary judgment as against 1095, Magan and Dechert on his claim pursuant to Labor Law § 240 (1). The motion court granted defendants' motion to the extent of dismissing all but plaintiff's cause of action pursuant to Labor Law § 240 (1). As to that cause of action, the court granted plaintiff's cross motion, deciding the issue of liability in his favor.

Defendants appeal, seeking reversal of the motion court's order to the extent it granted plaintiff's motion for partial summary judgment and denied their motion to dismiss plaintiff's cause of action pursuant to Labor Law § 240 (1). Dechert, not having moved for summary judgment before the motion court, nevertheless seeks dismissal of plaintiff's claims as against it for the same reasons proffered by the other defendants. For the reasons that follow hereinafter, I, like the majority, would modify the motion court's decision to deny partial summary judgment in plaintiff's favor.

Labor Law § 240 (1) applies where the work being performed subjects those involved to risks related to elevation differentials (*Gordon v Eastern Ry. Supply*, 82 NY2d 555, 561 [1993]; *Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 514 [1991]). Specifically, the hazards contemplated by the statute "are those related to the effects of gravity where protective devices are called for . . . because of a difference between the elevation level of the required work and a lower level" (*Gordon* at 561 [internal quotation marks omitted]). Since Labor Law § 240 (1) is intended to prevent accidents where ladders, scaffolds, or other safety devices provided to a worker prove inadequate to prevent an injury related to the forces of gravity (*id.*), it applies equally to injuries caused by falling objects and falling workers (*Narducci v Manhasset Bay Assoc.*, 96 NY2d 259, 267-268 [2001]). However, not every fall either of a worker from a scaffold or ladder or of an object constitutes a violation of Labor Law § 240 (1) (*Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280, 288 [2003]; *Narducci* at 267). Thus, a distinction

must be made between those accidents caused by the failure to provide a safety device required by Labor Law § 240 (1) and those caused by the general hazards of a workplace (*id.* at 268-269); the former constitutes a violation of Labor Law § 240 (1), while the latter does not (*Thompson v St. Charles Condominiums*, 303 AD2d 152, 153 [2003], *lv dismissed* 100 NY2d 556 [2003]).

Since not every injury caused by the effects of gravity falls within the ambit of Labor Law § 240 (1) (*Narducci* at 267), it is clear that liability turns on the nature of the activity being performed, and more specifically, on whether the activity requires the use of the safety devices enumerated in the statute. Whether an activity requires the use of the safety devices enumerated within Labor Law § 240 (1) turns on whether "the risk of some injury from defendants' conduct [i.e., the failure to provide the requisite safety devices, is] foreseeable" (*Gordon* at 562). More specifically, an accident falls within the purview of Labor Law § 240 (1) when, given the nature of the injury-producing task, a worker is exposed to a gravity-related hazard, meaning, a risk of a fall from an elevation or the risk of injury as a result of a falling object, so that the worker should be provided with adequate safety devices to prevent the gravity-related accident. Absent a foreseeability requirement,[1] then, we leave owners and contractors with no reasonable way to determine when the statute applies and therefore when they are required to provide the safety devices enumerated therein. After all, an accident cannot trigger the extraordinary protections of Labor Law § 240 (1) merely because it is gravity-related (*Narducci* at 267). Otherwise, virtually every accident would fall within the purview of Labor Law § 240 (1), and defendants would never be able to forecast when safety devices are required. For example, while a trip and fall, at ground level, over a defect or negligently placed object is, in large measure, caused by gravity, the Court of Appeals has held that such an accident does not give rise to liability under Labor Law § 240 (1) (*Melber v 6333 Main St.*, 91 NY2d 759, 763 [1998] [Labor Law § 240 (1) not implicated when plaintiff trips and falls over conduit protruding through unfinished floor]).

Appreciable risk of a particular harm, or, more particularly, foreseeability, as an element of any Labor Law § 240 (1) claim is of course not novel. It has in fact been expressly or implicitly

---

1. I concede that the statute (Labor Law § 240 [1]) does not impose a foreseeability requirement. However, as will be discussed in detail, such an element logically is, and has always been, an element in many cases analyzing Labor Law § 240 (1).

discussed in the relevant case law for decades. However, despite the use of the term in *Gordon*, our line of cases making this an essential element in cases involving the collapse of a permanent structure (*see Vasquez v Urbahn Assoc. Inc.*, 79 AD3d 493 [2010]; *Jones v 414 Equities LLC*, 57 AD3d 65 [2008]; *Espinosa v Azure Holdings II, LP*, 58 AD3d 287 [2008]), and our holding in *Buckley v Columbia Grammar & Preparatory* (44 AD3d 263 [2007], *lv denied* 10 NY3d 710 [2008]), where we held that foreseeability was in fact an essential element of any Labor Law § 240 (1) claim, foreseeability, in the context of Labor Law § 240 (1) jurisprudence, is a term we seldom see expressly mentioned in the relevant case law. Moreover, whether foreseeability is an element in any Labor Law § 240 (1) analysis remains a point of contention in our very own department (*see Ortega v City of New York*, 95 AD3d 125, 126 [2012] ["We hold that a plaintiff is not required to demonstrate that the injury was foreseeable, except in the context of a collapse of a permanent structure"]; *Vasquez* at 497 [Acosta, J., dissenting] ["the statute imposes no requirement that a particular accident be foreseeable"]). Nevertheless, even when not specifically mentioned, in a great number of cases, in particular those cases that premise liability under Labor Law § 240 (1) on the existence of a gravity-related risk or hazard, foreseeability has been dispositive and has been necessarily implied.

Recently, in *Runner v New York Stock Exch., Inc.* (13 NY3d 599 [2009]), the Court of Appeals reiterated that while the applicability of Labor Law § 240 (1) hinges on "whether the harm flows directly from the application of the force of gravity to the object" (*id.* at 604), it also dispositively hinges on "whether plaintiff's injuries were the direct consequence of a failure to provide adequate protection against a *risk arising from a physically significant elevation differential*" (*id.* at 603 [emphasis added]). Since a foreseeable risk is "[t]he risk reasonably to be perceived . . . [or] it is risk to another or to others within the range of apprehension" (*Palsgraf v Long Is. R.R. Co.*, 248 NY 339, 344 [1928]), it is clear, that the *risk* referenced by the Court of Appeals in *Runner* is a direct reference to the element of foreseeability. Indeed, if a particular hazard is not foreseeable, then it cannot be reasonably guarded against. *Runner*, of course, is only a recent example of the Court of Appeals implicit reference to foreseeability as an element in cases involving Labor Law § 240 (1).

In *Rocovich*, the Court, in addressing what kinds of tasks fell within the purview of the statute, held that given the types of devices called for by Labor Law § 240 (1), it applied when "eleva-

tion poses a *risk*" (78 NY2d at 514 [emphasis added]). Furthermore, in rejecting the plaintiff's contention that the mere happening of his accident, where he stepped into a 12-inch-deep trough, in close proximity to where he was required to work, triggered the protections of the statute, the Court held that such assertion was at odds with the thrust of the statute, which is "the protection against *risks* due in some way to relative differences in elevation" (*id.* at 515 [emphasis added]). In *Melber*, the Court of Appeals, again implying that foreseeability was crucial, dismissed the plaintiff's cause of action pursuant to Labor Law § 240 (1), citing its own precedent, stating that liability under the statute was confined "to [the] failure to protect against *elevation-related risks* (91 NY2d at 763 [emphasis added]). In *Narducci*, the Court of Appeals once again found that Labor Law § 240 (1) was inapplicable to the plaintiff's accident for want of foreseeability, albeit without ever expressly using the term. In *Narducci*, one of the plaintiffs was injured by a piece of glass that fell from a window frame while he worked on an adjacent window (96 NY2d at 266). The plaintiff had not been assigned to work at the window from which the glass fell, nor was there evidence that anyone had worked at that particular window before the plaintiff's accident (*id.* at 268). Noting that not every injury caused by a falling object falls under the penumbra of Labor Law § 240 (1), the Court granted the defendants' motion for summary judgment, holding that "[t]his was not a situation where a hoisting or securing device of the kind enumerated in the statute *would have been necessary or even expected*" (*id.* [emphasis added]). Thus, it is clear that in *Narducci*, the Court granted the defendants' motion for summary judgment because it was not reasonably foreseeable that the plaintiff's assigned task would expose him to the particular gravity-related hazard that caused his accident. Accordingly, the Court held that the defendants could not have *expected* the plaintiff's accident so as to require that he be provided with any safety devices as mandated by the statute.

In *Outar v City of New York* (5 NY3d 731 [2005]), the Court of Appeals again implied that foreseeability was dispositive in determining the applicability of Labor Law § 240 (1) to an accident that seemed far beyond the statute's purview. In *Outar*, the plaintiff was injured by a dolly that fell inside his work area from 5.5 feet above. While the dolly had essentially been parked and was being neither secured nor hoisted (*see* 286 AD2d 671, 672 [2001]), the Court nevertheless held that the accident fell within the ambit of the statute since "the dolly was an object that required securing for the purposes of the undertaking" (5 NY3d at 731). The Court's ruling in *Outar* necessarily implied

that foreseeability was decisive to the statute's applicability since the defendant could not have been required to secure the dolly had it not been reasonably foreseeable that the work the plaintiff was performing, the "undertaking," exposed him to the gravity-related hazard posed by the dolly, namely that it would fall and strike him.

Following Court of Appeals precedent, in *Buckley,* we expressly held that the dispositive issue with respect to the statute's applicability is "the foreseeable risks of harm presented by the nature of the work being performed" (44 AD3d 268 at 268). Thereafter, in *Jones, Espinosa,* and most recently in *Vasquez,* we continued to hold that foreseeability is an essential prerequisite to liability under Labor Law § 240 (1) (*Jones,* 57 AD3d at 79-80; *Espinosa,* 58 AD3d at 291; *Vasquez,* 79 AD3d at 495). Although these last three cases involved the collapse of permanent structures, and our holdings were limited to those facts, I see no reason to limit foreseeability, as a requirement, to only those kinds of cases. After all, as evinced by the foregoing discussion, in holding that foreseeability is an essential element I simply articulate what has in fact been the law for over two decades.

Based on the foregoing, it is beyond cavil that in cases pursuant to Labor Law § 240 (1) and, more particularly, as is the case here, cases involving injury by virtue of a falling object, the dispositive issue for purposes of the statute's applicability is not, as argued by defendants, whether an object falls from a permanent structure or whether at the time of injury the object was being hoisted or secured. Instead, the pertinent and indeed dispositive inquiry is whether it was reasonably foreseeable at the outset that the task assigned to a worker exposed him/her to a gravity-related hazard, so that he/she should have been provided with one or more of the safety devices required by the statute.

Defendants' contention that plaintiff's accident does not come within the ambit of Labor Law § 240 (1)'s protection is unavailing.[2] A review of the record evinces that the task assigned to plaintiff, namely the repositioning of the pencil box, presented a

---

2. It is certainly true, as argued by defendants, that our case law in this area has been less than consistent. For example, in *Doucoure v Atlantic Dev. Group, LLC* (18 AD3d 337, 338-339 [2005]), we held that "for section 240 (1) to apply, a plaintiff must show more than simply that an object fell causing injury to a worker. A plaintiff must show that the object fell, while being hoisted or secured, because of the absence or inadequacy of a safety device of the kind enumerated in the statute" (emphasis omitted). In *Dias v Stahl* (256 AD2d 235, 236 [1998]), we held that plaintiff's accident, where he was hit by a falling section of air conditioning duct, did not come under the purview of

foreseeable gravity-related risk, such that his task and indeed his resulting accident fall squarely within the ambit of Labor Law § 240 (1). Specifically, it was reasonably foreseeable that when plaintiff moved the pencil box, the conduit on top of the pencil box, since it was suspended from above, could fall and strike plaintiff. Presented with a foreseeable risk, defendants thus had a duty to provide him with an adequate safety device to prevent the conduit from falling and striking him.

Here, however, the conduit that ultimately fell was in fact secured and held in place by a compression coupling that had attached the falling conduit to the conduit on the floor above. The conduit was also held in place by a compression connector attaching the conduit to the pencil box. The pencil box, in turn, was held in place by its attachment to the Kindorf, a brace-like piece of metal attached to the walls. Thus, defendants did in fact provide plaintiff with a host of safety devices that served to secure the conduit and prevent its fall. I therefore turn to whether the compression coupling failed to properly secure the conduit so that plaintiff is entitled to have liability resolved in his favor, or, as argued by defendants, that this accident is solely the result of plaintiff's misuse of the compression coupling, so that dismissal of his claim is warranted.

Liability under Labor Law § 240 (1) is established when it is proved both that the statute has been violated and that the violation proximately caused the plaintiff's accident (*Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280, 287 [2003], *supra*). When safety devices were required and the defendant failed to provide them, the statute was violated as a matter of law (*Zimmer v Chemung County Performing Arts*, 65 NY2d 513, 523 [1985]). When, however, a defendant provides safety devices and an accident nevertheless occurs, the adequacy, functionality, and placement of said devices must be assessed in order to determine whether there has been a violation of the Labor Law (*Felker v Corning Inc.*, 90 NY2d 219, 224, 225 [1997]; *Buckley*, 44 AD3d at 268-269). A defendant who proves both that it did not violate the Labor Law and that the sole proximate cause of the plaintiff's accident was instead his/her own negligence will not be liable under Labor Law § 240 (1) (*Blake*, 1 NY3d at 290).

---

Labor Law § 240 (1) because the duct was "an integral part of the [building's] structure." While the holdings in those cases are seemingly inconsistent, in that they premise liability on issues unrelated to foreseeability, a review of those cases evince a complete lack of foreseeable risk of the particular harm befalling the plaintiffs therein. In both of those cases, plaintiffs were not exposed to a gravity related-hazard at the outset, such that the accident and more particularly, the gravity-related hazards that caused them injury, were not foreseeable. Therefore, the defendants therein were not required to provide any safety devices.

Further, a plaintiff who chooses not to use or misuses adequate and available safety devices is, as a matter of law, the sole proximate cause of his accident (*Gallagher v New York Post*, 14 NY3d 83, 88 [2010] ["Liability under section 240 (1) does not attach when the safety devices that plaintiff alleges were absent were readily available at the work site . . . and plaintiff knew he was expected to use them but for no good reason chose not to do so, causing an accident"]; *Robinson v East Med. Ctr., LP*, 6 NY3d 550, 554 [2006]; *Cahill v Triborough Bridge & Tunnel Auth.*, 4 NY3d 35, 39-40 [2004]).

Defendants argue that the safety device—the compression coupling—failed because plaintiff misused it, and that this misuse was the sole proximate cause of his accident. Specifically, defendants aver that the compression coupling adequately supported the weight of the upper conduit when it was used in conjunction with the Kindorf that secured the pencil box and to which the conduit was affixed. Thus, defendants argue that plaintiff's decision to remove the pencil box, part of the conduit's support, thereby leaving the conduit to hang solely from the compression coupling, overstressed the coupling, causing it to fail. Conversely, plaintiff argues that since the conduit fell, the compression coupling was thus inadequate to protect him from the gravity-related hazard posed by the conduit and that, accordingly, defendants violated Labor Law § 240 (1).

Having provided a safety device, defendants are only liable if the compression coupling failed because it was inadequate to secure the conduit, thereby causing this accident. While the compression coupling failed, the record supports defendants' contention that such failure was attributable to plaintiff's misuse of the coupling, namely, the method by which plaintiff performed his work. Therefore, there exists a sharp question of fact with respect to whether the compression coupling holding the conduit in place failed because it was inadequate or because plaintiff misused the coupling by removing supports designed to be used in conjunction therewith; the former constituting a violation of Labor Law § 240 (1), the latter precluding any liability thereunder. Thus, in granting partial summary judgment in plaintiff's favor, the motion court erred.

While not addressed by the majority, upon a search of the record, I find, for the very same reasons asserted by the motion court, that Dechert, while not having moved for summary judgment below, is nevertheless entitled to summary judgment dismissing plaintiff's causes of action for common-law negligence and pursuant to Labor Law §§ 200 and 241 (6) (CPLR 3212 [b]; *Merritt Hill Vineyards v Windy Hgts. Vineyard*, 61 NY2d 106,

110 [1984]; *Whitehead v Reithoffer Shows*, 304 AD2d 754, 755 [2003]; *Grimaldi v Pagan*, 135 AD2d 496, 497 [1987]).

Accordingly, I would not only modify the motion court's order to deny plaintiff summary judgment, but would also grant Dechert summary judgment on plaintiff's claims of common-law negligence and pursuant to Labor Law §§ 200 and 241 (6).

Tom, J.P., dissents in a memorandum as follows: Plaintiff's employer, nonparty Forest Electric, was retained to overhaul the wiring in the building known as 1095 Avenue of the Americas in Manhattan. After the company completed the installation of a four-inch wide "riser" (a vertical run of conduit) in the 11th-floor telecommunications closet, it received a change order to relocate the riser because a rectangular pull box, or "pencil box," was obstructing conduit being installed parallel to it by another company. As plaintiff explained, a pull box is installed in a riser to allow wiring to be pulled through the pipe from above or below. The work required plaintiff to remove the pull box, which was secured to a steel strut channel (Kindorf support) affixed to the floor and, at the top of the strut channel by means of a perpendicular extension, to the wall located a few feet away. The section of conduit below the pull box was secured at floor level with a clamp. The conduit above the pull box was held in place with a strap attached to the top of the Kindorf support and was joined at its top to another section of vertical conduit by a compression coupling, a ring-shaped device that tightens around the ends of the adjoining sections of conduit to hold the pipes in alignment and help secure them in place.

In the process of relocating the pull box, plaintiff had to drill new holes in the concrete floor directly underneath the new location to affix the lower bracket of the strut channel to the floor. Before drilling the holes, plaintiff cut through the conduit above the pull box with a Sawzall (a reciprocating demolition saw) and removed the box from the lower conduit and the Kindorf support. At this point, the upper section of conduit was secured only by the compression coupling holding it to the conduit above it. As plaintiff knelt on the floor drilling the holes for the support bracket, the upper section of conduit fell onto his right hand, breaking his thumb.

Plaintiff alleges that defendants violated Labor Law § 240 (1) by permitting the conduit to be improperly and inadequately secured, allowing it to fall and injure him. "Where a plaintiff's actions [are] the sole proximate cause of his injuries, . . . liability under Labor Law § 240 (1) [does] not attach" (*Robinson v East Med. Ctr., LP*, 6 NY3d 550, 554 [2006] [internal quotation marks omitted]; *Montgomery v Federal Express Corp.*, 4

NY3d 805 [2005]). Here, plaintiff's injuries were the direct consequence of his action in disengaging and removing the devices that secured the conduit pipe in place, to wit, the metal strap or clamp that secured the pipe to the Kindorf support and the pencil box upon which the conduit pipe was also attached. It is undisputed that the conduit was firmly secured in place with these devices before the work began. Plaintiff's injuries were not caused by a lack of protective equipment but, rather, by plaintiff's act of removing the supporting devices before drilling, which caused the section of conduit above the box (now attached to the overhead conduit pipe with only a compression coupling) to fall. Plaintiff offered no rational explanation for disengaging the two securing devices before starting to drill the hole in the floor, rather than leaving the devices in place until he completed the drilling or removing the overhanging piece of conduit pipe before drilling. To permit this action to go forward would require a departure from the well settled rule that the protection of Labor Law § 240 (1) is unavailable where no breach of the statutory duty to provide a worker with a protective device of the kind listed in the statute has been demonstrated (*see Robinson v East Med. Ctr., L.P.,* 6 NY3d at 554).

Here, there was no violation of Labor Law § 240 (1), nor does the majority identify any safety device that defendants failed to provide plaintiff for performing the work. The majority merely states, ''Plaintiff claims that he requested and should have been provided with a set screw coupling to secure the conduit pipe to the ceiling and that defendants' failure to provide this protective device was a proximate cause of his accident.'' It is not clear that the majority adopts plaintiff's position. In any event, the coupling is not a statutory safety device. Rather, it is a component part of an already built conduit system, whose purpose is to connect two sections of conduit pipes in alignment, using either a ring or a screw to apply pressure to the adjoining pipes.

Plaintiff's theory of recovery under Labor Law § 240 (1) is flawed. Labor Law § 240 (1) provides for safety devices to protect workers against gravity-related hazards while performing construction work, and has no application to the type of component part that plaintiff claims his employer should have used to assemble an already built conduit system. In fact, the type of coupling used to build the system is irrelevant since it was the metal strap and pencil box that held and secured the conduit pipe in place, not the coupling.

Further, there is no testimony, expert or otherwise, that such couplings are meant to suspend a substantial weight, and the

manner in which the box and conduit assembly was installed—
utilizing steel brackets, pipe straps, securing screws and floor
clamps to build a rigid, self-supporting unit—amply demon-
strates that the designer did not rely on pipe couplings for verti-
cal support.

The majority misreads plaintiff's deposition testimony in stat-
ing that "when directed to move the pool [sic] box, he requested
a set screw coupling to secure the pipe." Plaintiff merely testi-
fied that compression couplings had been exclusively used by
Forest Electric in performing the electrical work.

"Q. At any time after your accident, did you ever learn as to
why compression screw coupling was used as opposed to set
screw coupling?

"A. No. It's basic. They are both basic couplings.

"Q. Did you ever learn why one was used as opposed to the
other?

"A. No."

Moreover, the majority's presumption that if only a set screw
coupling had been made available to plaintiff his injury would
have been prevented reveals its misunderstanding of the
makeup of conduit pipe system and the operation in which he
was engaged. Even if plaintiff had specifically requested a set
screw coupling to use in his assigned task of moving the pull
box, which he did not, he would have been required to first
remove the existing compression coupling since at the time of
the accident, that was the only thing holding the section of
conduit that fell on him to the pipe above it, as reflected in
plaintiff's testimony.

"Q. Is it possible at the time of the accident that the bottom
of the conduit was still supported by the compression coupling?
Is it possible at the time of the accident that the bottom of the
conduit was still being locked in and was being supported by
the compression connector?

"A. The top piece of conduit was being supported by the top
compression coupling . . .

"Q. So the conduit was supported by the compression coupling
at the time only?

"A. Yes."

As indicated above, the removal of the existing compression
coupling in order to be replaced by a set screw coupling would
have meant removing or releasing the section of conduit pipe
that fell. Had plaintiff done so, there would have been no need
to secure the pipe with a new set screw coupling; the conduit's
removal would have eliminated the hazard it presented.

In marked similarity to *Narducci v Manhasset Bay Assoc.* (96 NY2d 259 [2001]), plaintiff's injury was the consequence of his own actions. There, the worker's act of sawing a window frame in the course of dismantling it caused a pane of glass from an adjacent window frame to fall and injure his arm. Here, plaintiff's removal of the devices securing the conduit in place and drilling a hole in the concrete floor caused the conduit to fall and injure his hand. Plaintiff's injury was not caused by the absence of a safety device of the kind enumerated in Labor Law § 240 (1). Succinctly stated, "That is not the type of risk that Labor Law § 240 (1) was intended to address" (*Narducci*, 96 NY2d at 268).

Unlike *Quattrocchi v F.J. Sciame Constr. Corp.* (11 NY3d 757 [2008], citing *Outar v City of New York*, 5 NY3d 731 [2005]), on which plaintiff relies, there is no allegation in this case that the falling object was unsecured before the work commenced (*Outar v City of New York*, 286 AD3d 671, 672 [2001] [falling dolly]; *Wilinski v 334 E. 92nd Hous. Dev. Fund Corp.*, 18 NY3d 1, 5 [2011] [falling pipes not secured when work commenced]). Rather, the conduit became unsecured as the direct consequence of plaintiff's own actions, which were the sole proximate cause of his injuries.

In contrast to the plaintiff in *Narducci*, who had no choice but to work beneath the window glass that fell on him, plaintiff herein could have taken basic precautions to prevent injury. To recapitulate, when plaintiff began work, the section of conduit that ultimately fell was supported by a clamp positioned about two feet above the pencil box and affixed to a supporting steel strut channel structure attached to the wall. The conduit was further supported by the box itself, on which the pipe rested and which was likewise affixed to the Kindorf support. Thus, plaintiff had the option of leaving in place both the clamp and the box while he drilled a hole in the floor beneath. In the alternative, having removed both the clamp and box, the logical and prudent course would have been to loosen the single compression coupling suspending the remaining section of the top conduit and remove that length of pipe, thereby eliminating any possibility that the hanging conduit would fall and injure him. Once again, the section of conduit pipe in issue was properly secured in place by supporting devices when the work began.

Accordingly, the order should be reversed, to the extent appealed from, and plaintiff's Labor Law § 240 (1) claim dismissed.