[8 NE3d 791, 985 NYS2d 416]

RICHARD FABRIZI, Respondent, v 1095 AVENUE OF THE AMERICAS, L.L.C., et al., Appellants, and VERIZON NEW YORK, INC., et al., Defendants. (And Other Actions.)

Argued January 9, 2014; decided February 20, 2014

## POINTS OF COUNSEL

*London Fischer LLP*, New York City (*Daniel Zemann, Jr.,* and *David B. Franklin* of counsel), for appellants. I. The circumstances giving rise to plaintiff's injury are outside the scope of Labor Law § 240 (1). (*Rocovich v Consolidated Edison Co.*, 78 NY2d 509; *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494; *Narducci v Manhasset Bay Assoc.*, 96 NY2d 259; *Misseritti v Mark IV Constr. Co.*, 86 NY2d 487; *Wilinski v 334 E. 92nd Hous. Dev. Fund Corp.*, 18 NY3d 1; *Marin v AP-Amsterdam 1661 Park LLC*, 60 AD3d 824; *Garcia v DPA Wallace Ave. I, LLC*, 101 AD3d 4151; *Outar v City of New York*, 286 AD2d 671, 5 NY3d 731; *Quattrocchi v F.J. Sciame Constr. Corp.*, 11 NY3d 757, 44 AD3d 377; *McLean v 405 Webster Ave. Assoc.*, 98 AD3d 1090.) II. Plaintiff's injury was caused solely by his misuse of the supports of the conduit by disconnecting them. (*Robinson v East Med. Ctr., LP*, 6 NY3d 550; *Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280; *Broggy v Rockefeller Group, Inc.*, 8 NY3d 675; *Outar v City of New York*, 286 AD2d 671, 5 NY3d 731.) III. All issues raised in the instant appeal are properly before this Court. (*Hecker v State of New York*, 92 AD3d 1261;

*Misseritti v Mark IV Constr. Co.*, 86 NY2d 487; *Narducci v Manhasset Bay Assoc.*, 96 NY2d 259.)

*Pollack Pollack Isaac & DeCicco, LLP*, New York City (*Brian J. Isaac, Michael H. Zhu* and *Kenneth J. Gorman* of counsel), and *Block O'Toole & Murphy* for respondent. I. Defendants are not entitled to summary judgment because plaintiff has a cognizable Labor Law § 240 (1) claim; in fact, plaintiff is entitled to partial summary judgment because the protective device provided to him at the site proved inadequate to shield him from harm directly flowing from the application of the force of gravity to the conduit pipe. (*Long v Forest-Fehlhaber*, 55 NY2d 154; *Haimes v New York Tel. Co.*, 46 NY2d 132; *Koenig v Patrick Constr. Corp.*, 298 NY 313; *Bush v Goodyear Tire & Rubber Co.*, 9 AD3d 252; *Bland v Manocherian*, 66 NY2d 452; *Quigley v Thatcher*, 207 NY 66; *Naughton v City of New York*, 94 AD3d 1; *Outar v City of New York*, 5 NY3d 731; *Quattrocchi v F.J. Sciame Constr. Corp.*, 11 NY3d 757; *Rzymski v Metropolitan Tower Life Ins. Co.*, 94 AD3d 629.) II. Arguments regarding foreseeability and sole proximate cause are unpreserved for review by this Court; in any event, the risk of injury was foreseeable for purposes of applying the statute and plaintiff's conduct was not the sole proximate cause. (*Merrill v Albany Med. Ctr. Hosp.*, 71 NY2d 990; *Lichtman v Grossbard*, 73 NY2d 792; *Matter of Shannon B.*, 70 NY2d 458; *Rentways, Inc. v O'Neill Milk & Cream Co.*, 308 NY 342; *Wilson v Galicia Contr. & Restoration Corp.*, 10 NY3d 827; *Matter of Salino v Cimino*, 1 NY3d 166; *People v Robinson*, 88 NY2d 1001; *Matter of Yeshivath Shearith Hapletah v Assessor of Town of Fallsburg*, 79 NY2d 244; *Bingham v New York City Tr. Auth.*, 99 NY2d 355.)

**OPINION OF THE COURT**

Pigott, J.

Plaintiff, an electrician employed by Forest Electric Corp. (Forest), sustained injury when a 60-80 pound conduit pipe fell on his hand. Forest had been hired by defendant J.T. Magen Construction Company, Inc. (Magen) to overhaul the electrical system in offices leased by defendant Dechert, LLP (Dechert) from the building owner, defendant 1095 Avenue of the Americas, L.L.C. (1095).

As part of the overhaul, Forest was responsible for the installation of conduit piping through the building's floors. The conduit enabled telecommunication wires to run from the building's sub-cellar through each floor's respective telecom-

munication closet. The run of conduit on each floor contains a "pencil box" that provides access to the telecommunication wire.

On the day of the incident, plaintiff was relocating a pencil box that Forest had installed the previous week. The pencil box was situated between, and affixed to, two pieces of conduit that were four inches in diameter. The top section of conduit was 8 to 10 feet long and ran vertically from the top of the pencil box to the ceiling; the lower section ran vertically from the bottom of the pencil box to the floor. The top conduit was connected to a similar horizontal conduit near the ceiling by a four-inch compression coupling.

The pencil box proper was secured by a metal "Kindorf support." Because the pencil box was obstructing conduit that was to be installed adjacent to the box, plaintiff had to move it, which required him to drill holes in the floor to relocate the Kindorf support. Before drilling the holes, however, plaintiff cut through the conduit just above and below the pencil box. He then removed the pencil box leaving the top conduit dangling by the compression coupling near the ceiling. Plaintiff knelt on the floor to begin drilling. Approximately 15 minutes later, while plaintiff was drilling, the top conduit fell, striking plaintiff on the hand.

Plaintiff thereafter brought this action against defendants and others, asserting, as relevant here, that defendants violated Labor Law § 240 (1). That statute provides that

> "[a]ll contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."

After joinder of issue and completion of discovery, defendants 1095 and Magen moved for summary judgment dismissing the section 240 (1) cause of action. Plaintiff opposed the motion and cross-moved for partial summary judgment on liability against

1095, Magen and Dechert,[1] claiming, in reliance on plaintiff's deposition testimony, that a more secure "set screw coupling,"[2] rather than the purportedly inadequate compression coupling, should have been used to secure the top conduit. Supreme Court granted plaintiff's motion for partial summary judgment on liability, and denied defendants' motion seeking to dismiss the section 240 (1) claim, holding that the conduit, being attached to the ceiling by a compression coupling that failed, was not properly secured so as to afford plaintiff protection (2011 NY Slip Op 31529[U] [2011]).

A divided Appellate Division modified the order of Supreme Court by denying plaintiff's motion for summary judgment, holding that plaintiff failed to establish as a matter of law that defendants' failure to provide a protective device, i.e., a set screw coupling, was a proximate cause of his accident, but otherwise affirmed the order (98 AD3d 864, 865 [1st Dept 2012]). The dissenting Justice contended that the coupling did not constitute a statutory safety device of the kind enumerated in section 240 (1) and therefore defendants should have been granted summary judgment (*id.* at 876 [Tom, J., dissenting]). The Appellate Division certified the following question to this Court: "Was the order of the Supreme Court, as modified by this Court, properly made?" We answer the certified question in the negative.

Labor Law § 240 (1) as cited above requires owners and contractors to provide proper protection to those working on a construction site (*see Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 513 [1991]). It imposes absolute liability where the failure to provide such protection is a proximate cause of a worker's injury (*see Wilinski v 334 E. 92nd Hous. Dev. Fund Corp.*, 18 NY3d 1, 7 [2011]).

In order to prevail on summary judgment in a section 240 (1) "falling object" case, the injured worker must demonstrate the existence of a hazard contemplated under that statute "and the failure to use, or the inadequacy of, a safety device of the kind enumerated therein" (*Narducci v Manhasset Bay Assoc.*, 96 NY2d 259, 267 [2001], citing *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501 [1993]). Essentially, the plaintiff must demonstrate that at the time the object fell, it either was being

---

**1.** Dechert did not move for summary judgment.

**2.** A set screw coupling has two screws on both sides that are placed into the conduit and are tightened with either a ratchet or screwdriver, thereby locking the conduit in place.

"hoisted or secured" (*Narducci*, 96 NY2d at 268), or "required securing for the purposes of the undertaking" (*Outar v City of New York*, 5 NY3d 731, 732 [2005]; *see Quattrocchi v F.J. Sciame Constr. Corp.*, 11 NY3d 757, 759 [2008]). Contrary to the dissent's contention, section 240 (1) does not automatically apply simply because an object fell and injured a worker; "[a] plaintiff must show that the object fell . . . *because of* the absence or inadequacy of a *safety device* of the kind enumerated in the statute" (*Narducci*, 96 NY2d at 268 [second emphasis supplied]).

The Appellate Division properly concluded that plaintiff had not established entitlement to summary judgment on liability. It erred, however, in denying summary judgment to defendants 1095 and Magen, because they established as a matter of law that the conduit did not fall on plaintiff due to the absence or inadequacy of an enumerated safety device.

The compression coupling, which plaintiff claims was inadequate, is not a safety device "constructed, placed and operated as to give proper protection" from the falling conduit. Its only function was to keep the conduit together as part of the conduit/pencil box assembly. The coupling had been installed a week before the incident and had been serving its intended purpose until a change order was issued and plaintiff dismantled the conduit/pencil box assembly. Plaintiff's argument that the coupling itself is a safety device, albeit an inadequate one, extends the reach of section 240 (1) beyond its intended purpose to any component that may lend support to a structure. It cannot be said that the coupling was meant to function as a safety device in the same manner as those devices enumerated in section 240 (1).

It follows that defendants' failure to use a set screw coupling is not a violation of section 240 (1)'s proper protection directive.[3] A set screw coupling, utilized in the manner proposed by plaintiff, is not a safety device within the meaning of the statute. Plaintiff concedes that compression and set screw couplings are "basic couplings" that serve identical purposes, namely, to function as support for the conduit/pencil box assembly, not to provide worker protection. Given that either coupling would have served the purpose, it is of no moment that defendants

---

3. The Appellate Division erroneously stated that plaintiff had "requested a set screw coupling to secure the pipe to prevent the pipe from falling during the disassembly" when he had been directed to move the pencil box (98 AD3d at 865). The record demonstrates that plaintiff requested a set screw coupling a week before the incident for a task unrelated to the one at issue.

utilized compression couplings rather than set screw couplings as part of the assembly.

Accordingly, on the appeal by defendants 1095 and Magen, the order of the Appellate Division should be reversed, with costs, the motion by defendants 1095 and Magen for summary judgment dismissing the section 240 (1) claims against them should be granted, and the certified question answered in the negative. The appeal, insofar as taken by Dechert, should be dismissed, without costs.[4]

Chief Judge LIPPMAN (dissenting). It seems clear to me that plaintiff has established his entitlement to summary judgment by demonstrating that his gravity-related injury was proximately caused by the defendants' failure to provide an adequate safety device. Therefore, I dissent.

Plaintiff, an electrician, was injured in the course of repositioning a "pencil box" that served as an access point for telecommunication wires. Plaintiff was assigned this task pursuant to a "change order" intended to remedy an error committed by his employer. Specifically, upon its original installation approximately a week earlier, the pencil box had been positioned in such a way that it threatened to obstruct part of the building infrastructure yet to be installed.

To accomplish the task, plaintiff disconnected the box from a structure known as a "Kindorf support," which anchored the box to the floor and the wall, and also from two sections of conduit pipe running above and below the pencil box, respectively. After the pencil box was disassembled from its supports, a considerable length of galvanized steel conduit, weighing 60-80 pounds, was left hanging above plaintiff as he knelt below to drill. The conduit was connected to another section of pipe near the ceiling by a compression coupling, which is essentially a cylindrical metal sleeve that tightens around the ends of two pipes to secure them together. Next, plaintiff drilled holes in the concrete floor in preparation for relocating the Kindorf. When he commenced the drilling, the suspended conduit came loose from its coupling and plummeted to the floor, crushing plaintiff's right thumb.

Section 240 (1) of the Labor Law imposes absolute liability on certain contractors, owners and their agents when their failure

---

**4.** Since Dechert did not move for summary judgment and the Appellate Division denied plaintiff's motion for summary judgment, Dechert was not aggrieved by the Appellate Division order.

to provide an adequate safety mechanism caused a worker's injury in a gravity-related accident. Our recent precedent in this area makes it clear that, in determining whether section 240 (1) applies, " 'the dispositive inquiry . . . does not depend upon the precise characterization of the device employed' " (*Wilinski v 334 E. 92nd Hous. Dev. Fund Corp.*, 18 NY3d 1, 10 [2011], quoting *Runner v New York Stock Exch., Inc.*, 13 NY3d 599, 603 [2009]). It follows that the availability of statutory protection here should not depend on whether couplings can be characterized as safety devices under section 240 (1), or whether they should be considered part of a building's permanent infrastructure.

" 'Rather, the single decisive question is whether plaintiff's injuries were the direct consequence of a failure to provide adequate protection against a risk arising from a physically significant elevation differential' " (*id.* [emphasis omitted]). Accordingly, the crucial legal questions arising from the face of this record are whether the task of repositioning the pencil box entailed an elevation-related risk that triggered defendants' duty to supply adequate safety devices, and whether the failure to do so caused the accident.

Clearly, plaintiff was exposed to a gravity-related hazard within the meaning of the statute. Kneeling on the floor to drill, he was situated several feet below a 60-to-80-pound segment of conduit pipe made of galvanized steel. The conduit was attached to the pipe above by only a compression coupling whose grip was inadequate to withstand the vibrations of drilling. "The elevation differential here involved cannot be viewed as de minimis, particularly given the weight of the object and the amount of force it was capable of generating, even over the course of a relatively short descent" (*Runner*, 13 NY3d at 605).

As to the question of proximate cause, the record evidence shows that the absence of an effective safety device caused plaintiff's injury. It requires little imagination to conclude that a tool capable of stabilizing the conduit pipe—whether brace, clamp, coupling, or otherwise—would be precisely the sort of device contemplated by section 240 (1). Without such a device, however, the pipe was insufficiently secure and plaintiff incurred injury as a result. As the motion court aptly summarized, "the conduit was disconnected from the Kindorf[ ] support and only attached to the ceiling by a compression coupling, and because it fell, it was not secured as to give plaintiff proper protection" (*Fabrizi v 1095 Ave. of the Americas, L.L.C.*, 2011 NY Slip Op 31529[U], *11 [Sup Ct, NY County 2011]).

By focusing myopically on whether couplings fall under the statute, the majority loses sight of defendants' burden on summary judgment. To prevail, it is not enough for defendants to argue that a particular alternative device can be sensibly distinguished from those enumerated in the statute. Instead, they must demonstrate either the absence of a gravity-related risk or, where the risk posed by the elevation differential is readily apparent, a deficient causal nexus between the failure to provide a safety device and plaintiff's injury.

Defendants did raise a challenge with regard to causation in arguing that plaintiff's method of performing the work unnecessarily created the risk. According to defendants, as well as the dissent in the Appellate Division, plaintiff singlehandedly caused the accident by dismantling the pencil box prior to drilling holes in the floor. However, there was no evidence presented that this modus operandi constituted anything but standard procedure in the trade. Plaintiff made a prima facie showing that he had performed the same task four or five times in the course of his career and had routinely undertaken it in an identical manner. In opposition, defendants failed to raise a triable issue of fact as to whether plaintiff's own conduct was the proximate cause of the accident (*see e.g. McCallister v 200 Park, L.P.*, 92 AD3d 927, 929 [2d Dept 2012]; *Kempisty v 246 Spring St., LLC*, 92 AD3d 474, 474-475 [1st Dept 2012]; *cf. Quattrocchi v F.J. Sciame Constr. Corp.*, 11 NY3d 757, 759 [2008] [triable issue of fact as to whether plaintiff caused the accident where he was warned not to enter the accident area]).

In sum, defendants' proof failed to rebut plaintiff's prima facie showing that his injury resulted from the absence of a safety device capable of guarding against the gravity-related risk. Accordingly, I would grant summary judgment to plaintiff. In reaching a contrary result, the majority imposes an undue burden on plaintiff that serves only to frustrate the Labor Law's salutary purpose of ensuring worker protection.

Judges GRAFFEO, READ and SMITH concur with Judge Pigott; Chief Judge LIPPMAN dissents in an opinion in which Judge RIVERA concurs; Judge ABDUS-SALAAM taking no part.

On appeal by defendants 1095 Avenue of the Americas, L.L.C. and J.T. Magen Construction Company, Inc., order reversed, with costs, motion by those defendants for summary judgment dismissing the Labor Law § 240 (1) claim as against them

granted and certified question answered in the negative. Appeal, insofar as taken by defendant Dechert, LLP, dismissed, without costs, upon the ground that it is not a party aggrieved (CPLR 5511).