Macancela v E.W. Howell Co. LLC (2024 NY Slip Op 51263(U))

[*1]

Macancela v E.W. Howell Co. LLC

2024 NY Slip Op 51263(U)

Decided on September 10, 2024

Supreme Court, Kings County

Frias-Colón, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 10, 2024
Supreme Court, Kings County

Jorge Macancela and Jazmine Gomez Martez, Plaintiffs,

against
E.W. Howell Co. LLC, The City of New York and New York City Health and Hospitals Corporation, Defendants.
E.W.Howell Co., LLC, Third-Party Plaintiffs,
against
Unitech Services Group, Inc., Third-Party Defendant.

Index No. 518515/2017

For Plaintiffs Jorge Macancela and Jasmine Gomez Martes: Brian Isaac of Pollack Pollack Isaac & DeCicco, 250 Broadway, Suite 600, New York, NY 10007, 212-233-8100, bji@ppid.com
For Defendant E.W. Howell: Mario Castellito of Castellito Benvenuto & Kim LLP., 250 White Plains Road Tarrytown, NY 10591, 914-406-0853, gbenvenuto@cbkattorneys.com
For Defendant Unitech: 
James Finn of Rivkin Radler LLP, 926 RXR Plaza, Uniondale, NY 11556, 516-357-3000, james.finn@rivkin.com
For Defendant City: 
Jason Meneses of Cornell Grace, P. C., 111 Broadway Suite 810, New York, NY 10006, 212-233-1100, jmeneses@cornellgrace.com 

Patria Frias-Colón, J.

Recitation per CPLR § 2219 (a), of the papers considered on review of this motion:
NYSCEF Doc. #s 138-153, 234-259,282,329-332, 341 by Defendant Howell
NYSCEF Doc. #s 180-231, 337-339 by Defendant City
NYSCEF Doc. #s 292-327 by Plaintiff
NYSCEF Doc. #s 260-280, 284-291, 333-340 by Defendant Unitech
Pursuant to CPLR § 3212, Plaintiffs Jorge Macancela and Jazmine Gomez Martes ("Plaintiffs") move for partial summary judgment on their Labor Law § 240(1) cause of action (Motion Sequence 8). Defendants The City of New York ("City") and New York City Health & Hospitals Corporation ("HHC" and cumulative "City Defendants") move for summary judgment on their contractual indemnification claims against Defendant/Third-Party Plaintiff E.W. Howell Co., LLC ("Howell") and Third-Party Defendant Unitech Services Group, Inc. ("Unitech") (Motion Sequence 9). Pursuant to CPLR § 3212, the City Defendants cross-move for summary judgment and dismissal of the complaint (Motion Sequence 10). Pursuant to CPLR § 3212, Defendant Howell cross-moves for summary judgment and dismissal of the complaint on its claim for contractual indemnification from Defendant Unitech (Motion Sequence 11). Pursuant to CPLR § 3212, Defendant Unitech cross-moves for summary judgment and dismissal of the complaint (Motion Sequence 12).
Upon the foregoing papers and oral argument on October 4, 2023, Plaintiffs' motion sequence 8 is DENIED, City Defendants' motion sequence 9 is DENIED and their cross-motion sequence 10 is partly GRANTED to the extent that causes of action regarding Labor Law §§ 240(1) and 241(6) are dismissed and regarding common-law negligence and Labor Law § 200 are dismissed with respect to the means and methods theory of liability; the motion is otherwise DENIED. Defendant Howell's cross-motion sequence 11 for summary judgment pursuant to Labor Law § 240(1) is GRANTED. Defendant Unitech's cross-motion sequence number 12 is GRANTED pursuant to Labor Law §§ 240 (1) and 241 (6) and those causes of action are dismissed against Defendant Howell; Plaintiffs' common-law negligence and Labor Law § 200 causes of action are dismissed as to liability; the motion is otherwise DENIED.
Background
In this action premised on common-law negligence and violations of Labor Law §§ 200, 240(1) [*2]and 241(6), Plaintiff Jorge Macancela[FN1]
 alleges that he suffered injuries on March 11, 2017 when a ceiling duct fell on him while he was performing demolition work in what was then known as Coney Island Hospital ("Hospital")[FN2]
. The Hospital is owned by Defendant City and operated by Defendant HHC. At some point in 2016 or early 2017, Defendant City and non-party New York City Economic Development Corporation ("NYCEDC") entered into a contract with non-party TDX Construction Corporation ("TDX") for several hospital renovation projects, including the project at the subject Hospital to renovate the first and fifth floors. TDX thereafter hired Defendant E.W. Howell ("Howell") to act as the general contractor for the project at the Hospital, and hired Defendant Unitech Services Group, Inc. ("Unitech") to perform asbestos removal and demolition work on the project. Plaintiff Macancela was employed by Defendant Unitech at the time of the accident. 
Unitech's work on the day of the accident included the removal of two concrete block walls in a small room on the fifth floor of the Hospital. There was a duct that ran across through one of these walls and across the ceiling of this room to another wall. It is undisputed that this duct was part of the preexisting structure of the Hospital and that Unitech's work did not include the removal of this duct.
Howell's Project Superintendent, Rick Rosetti, testified that he walked the room at issue with a Unitech supervisor prior to the start of construction and observed that the duct was hung from the concrete slab ceiling by pencil rods that were imbedded directly into the ceiling at several locations[FN3]
. In view of the number of pencil rods supporting the duct and since ductwork is not generally heavy, Rossetti believed that the duct was adequately supported and would not fall when the wall was removed[FN4]
. During his visual inspection, Rossetti observed nothing about the pencil rods and other support components that suggested they were inadequate or insufficient to secure the duct to the ceiling[FN5]
. Rossetti also testified that, in general, ductwork is supported by overhead fasteners rather than any walls they may pass through[FN6]
.
According to Plaintiff Macancela's deposition testimony, on the day of the accident his supervisor instructed him and three other workers to demolish two concrete block walls of a small room on the fifth floor[FN7]
. Before Plaintiff Macancela started this work, he noticed a duct in the ceiling that passed through one of the walls to be demolished and ran across the ceiling to another [*3]wall that was not being demolished[FN8]
. To remove the wall through which the duct passed, he used a "combo" tool, like a sledgehammer, and the ductwork appeared to be stable, not moving or shaking and Plaintiff Macancela had no reason to believe that the duct would fall when the blocks were removed[FN9]
. Just before the accident, Plaintiff Macancela removed all the blocks to the left of the duct and was just starting to remove two blocks underneath the duct attached to the blocks to the right. The bottom of the duct was touching these two blocks and when he struck the block on the left a second time, this block moved and the duct fell from the ceiling onto Plaintiff Macancela[FN10]
. 
Superintendent Rossetti testified at his deposition that when he arrived at the accident location, he observed the duct lying on the floor and observed that the interior of the duct had been filed with bricks and mortar[FN11]
. He had no idea why the duct would have been lined with bricks and in his experience working construction, he had never seen a duct filled with bricks[FN12]
. Rossetti believed that it was the weight of the bricks placed in the duct that caused it to fall[FN13]
. Prior to the accident, no one made complaints to Rossetti about there being anything inside the fallen duct and since the top was flush with the ceiling, Rossetti was unable to see into the duct to see if there was anything inside[FN14]
. 
DISCUSSION
Labor Law § 240(1)
It is in this factual context the parties' competing motions must be decided. Labor Law § 240(1)[FN15]
 imposes absolute liability on owners and contractors or their agents when they fail to [*4]protect workers employed on a construction site from injuries proximately caused by risks associated with falling from a height or those associated with falling objects. See Wilinski v 334 East 92nd Housing Dev. Fund Corp., 18 NY3d 1, 3 (2011); Narducci v Manhasset Bay Assoc., 96 NY2d 259, 267-268 (2001); Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 500 (1993). For a defendant to be held liable under § 240(1), a plaintiff's injuries must be both the "direct consequence of the application of the force of gravity to an object or person" and "the direct consequence of a failure to provide adequate protection against a risk arising from a physically significant elevation differential". Runner v New York Stock Exch., Inc., 13 NY3d 599, 603-604 (2009); see Wilinski, 18 NY3d at 10; Simmons v City of New York, 165 AD3d 725, 726-727 (2d Dept 2018). With respect to accidents involving falling objects, the "plaintiff must show more than simply that an object fell causing injury to a worker". Narducci, 96 NY2d at 268; see also Fabrizzi v 1095 Ave. of Ams., L.L.C., 22 NY3d 658, 663 (2014). A plaintiff must show that, at the time the object fell, it was "being hoisted or secured"[FN16]
 or "required securing for the purposes of the undertaking"[FN17]
 and that the object fell "because of the absence or inadequacy of a safety device of the kind enumerated in the statute"[FN18]
. 
The fact that the falling object at issue was part of the permanent or pre-existing structure of a building weighs against finding that a Labor Law § 240(1) device was required to secure it[FN19]
. Such objects generally only need to be secured where there is a foreseeable risk inherent in the work[FN20]
 or foreseeable risk arising from the condition of a building that would require their securing[FN21]
.
Here, the record amply supports the conclusion that there was no reason to suspect that the duct needed to be secured with a Labor Law § 240(1) safety device. Although Plaintiff Macancela's work entailed removing the blocks under the duct, Rosetti testified that ductwork is generally supported by overhead fasteners and not any wall it may pass through and upon visual inspection [*5]the duct here appeared to be adequately supported and that there was no apparent issue with the fasteners nor that the duct was filled with bricks[FN22]
. Rosetti confirmed that, prior to this accident, he never encountered a duct filled with bricks[FN23]
. The City Defendants submitted an affidavit from HHC Senior Project Manager of Design and Construction, Kelly Burns, confirming she observed the duct and its supports on numerous occasions prior to the accident, did not know that it was filled with bricks and mortar, never noticed sagging or moving from its position against the ceiling and never noticed any problems with the supports attaching it to the ceiling[FN24]
. Plaintiff's own testimony that the duct did not move or shake as he was demolishing the wall, likewise suggests that there was no reason to suspect an issue with the duct prior to the accident. 
The City Defendants also provided an affidavit from engineer Bernard Lorenz, who opined that, absent the bricks, the manner that the duct was hung from the ceiling was more than sufficient to support it upon the removal of the wall and that there was no reason to foresee that the duct would fall from the ceiling[FN25]
. Contrary to Plaintiffs' assertions, in view of the expert's detailed analysis, the engineer's affidavit is adequate despite the fact that the engineer relied upon deposition testimony and photographs of the duct and its supports and did not personally examine the premises. See Johnson v City of New York, 102 AD3d 746, 749 (2d Dept 2013); Pereira v Quogue Field Club of Quogue, Long Is., 71 AD3d 1104, 1105-1106 (2d Dept 2010). 
The City Defendants also demonstrated that it was not foreseeable that the duct would fall when the wall was removed, therefore that there was no need for a Labor Law § 240(1) securing device to be used while Plaintiff and his coworkers were performing their work. See Flossos, 108 AD3d at 649-650; Marin, 60 AD3d at 825-826; Buckley, 44 AD3d at 268-271; Handley v White Assoc., 288 AD2d 855, 855 (4th Dept 2001); Dias v Stahl, 256 AD2d 235, 236 (1st Dept 1998); Mosquera v Triton Constr. Co., LLC, 64 Misc 3d 1216 [A], 2019 NY Slip Op 51189, *2-3 [U] (Sup Ct, Kings County 2019); see also Fabrizi, 22 NY3d at 663-664; Cruz, 218 AD3d at 736; Carrillo, 131 AD3d at 662-663; cf. Romero v 2200 Northern Steel, LLC, 148 AD3d 1066, 1067 (2d Dept 2017); see also Mena v 485 Seventh Ave. Assoc. LLC, 199 AD3d 420 at 421 (1st Dept 2021). 
The cases relied upon by Plaintiffs in their opposition papers are distinguishable from the facts here. For example, Salinas v Barney Skanska Constr. Co., 2 AD3d 619 (2d Dept 2003), the plaintiff was removing a duct by burning through the metal rods supporting the duct without any safety devices to support it (id. at 620). In Mena v 485 Seventh Ave. Assoc. LLC, 199 AD3d 420 (1st Dept 2021), the Appellate Division, First Department found that there were factual issues with respect to the need for a securing device because photographs of the accident location demonstrated that it was reasonable to believe that plaintiff's demolition work would cause a ceiling collapse (id. at 421). Similarly, in Clemente v 205 W. 103 Owners Corp., 180 AD3d 516 (1st Dept 2020), the First Department found that plaintiff's affidavit indicated he observed water stains in the ceiling was enough to raise factual issues as to whether he was exposed to a [*6]foreseeable risk of injury because a bathroom ceiling was in such a state of disrepair that a Labor Law § 240(1) protective device was required to protect against a ceiling collapse (id. at 517). Foreseeability of the ceiling collapse does not appear to have been at issue in Sinchi v HWA 1290 III LLC, 184 AD3d 408, 408-409 (1st Dept 2020), affirming 2019 NY Slip Op 31096[U] (Sup Ct, New York County 2019), where there does not appear to have been a dispute that collapse was caused by the progress of the demolition work. Diaz v HHC TS Reit LLC, 193 AD3d 640 (1st Dept 2021) involved the fall of 8 to 12 feet tall metal pipes that were resting vertically and unsecured on a column. 
Plaintiffs point to no rule or regulation suggesting that Rossetti's visual inspection of the duct and its supports was inadequate. Plaintiffs did not submit an affidavit from an expert addressing the adequacy of Rossetti's inspection prior to the work or suggesting that the analysis in the City Defendants' engineer's affidavit was incorrect. Other than that the cement blocks of the wall were under the duct, Plaintiffs do not provide sufficient evidence to support their position that it was foreseeable that the duct would fall when the blocks under it were removed. Plaintiffs failed to raise material fact issue(s) regarding the need for a Labor Law § 240 protective device. Consequently, the City Defendants and Defendant Howell are entitled to summary judgment and dismissal of Plaintiffs' Labor Law § 240(1) cause of action. The same reasoning that absolves the City Defendants from liability for this cause of action is applicable to Defendant Howell. Plaintiffs failed to demonstrate entitlement to summary judgment on their Labor Law § 240(1) cause of action, and as a result Plaintiff's motion on these grounds is also denied. 
Labor Law § 241(6)
With respect to Plaintiffs' Labor Law § 241(6) cause of action, the City Defendants demonstrated that the Industrial Code sections relied upon by Plaintiffs are insufficiently specific to support a § 241(6) cause of action, are inapplicable to the facts here, or were not violated. See generally Rizzuto v L.A. Wenger Contr. Co., 91 NY2d 343, 349-350 (1998); Castro v Wythe Gardens, LLC, 217 AD3d 822, 825-826 (2d Dept 2023). As Plaintiffs do not oppose this portion of the City Defendants or Defendant Howell's respective cross-motions, these Defendants are entitled to summary judgment dismissing Plaintiffs' § 241(6) cause of action. See Debennedetto v Chetrit, 190 AD3d 933, 936 (2d Dept 2021); Pita v Roosevelt Union Free Sch. Dist., 156 AD3d 833, 835 (2d Dept 2017).
Labor Law § 200 and Common-Law Negligence
The deposition testimony demonstrates that Defendants did not supervise or control the injury producing work, and thus may not be held liable for Plaintiffs' common-law negligence and Labor Law § 200 causes of action to the extent that they are premised on a means and methods theory of liability. See Wilson v Bergon Constr. Corp., 219 AD3d 1380, 1383 (2d Dept 2023); Kefaloukis v Mayer, 197 AD3d 470, 471 (2d Dept 2021); Lopez v Edge 11211, LLC, 150 AD3d 1214, 1215-1216 (2d Dept 2017). As Plaintiff only opposed these causes of action to the extent that they are premised on a dangerous property condition theory of liability, Defendants are entitled to summary judgment and dismissal of those causes of action with respect to the means and methods theory of liability. 
Where a premises condition is at issue, property owners and general contractors may be held liable under common-law negligence and for a violation of Labor Law § 200 if they either created the dangerous condition that caused the accident or had actual or constructive notice of the [*7]dangerous condition that caused the accident. See Abelleira v City of New York, 120 AD3d 1163, 1164 (2d Dept 2014); Bauman v Town of Islip, 120 AD3d 603, 605 (2d Dept 2014); Ortega v Puccia, 57 AD3d 54, 61 (2d Dept 2008).
Here, through Rosetti's deposition testimony and other submitted competent evidence, Defendant Howell demonstrated it did not create the dangerous condition involving the duct and did not have actual or constructive notice that it was likely to fall under the circumstances. There was no obvious defect with the duct supports. Defendant Howell was not told that there were bricks in the duct and would not have discovered their presence by way of a visual inspection since the duct was flush against the ceiling. Therefore, Defendant Howell demonstrated that the danger presented by the bricks constituted a latent condition that was not discoverable upon a reasonable visual inspection. See Leon-Rodriguez v Roman Catholic Church of Sts. Cyril & Methodius, 192 AD3d 883, 886 (2d Dept 2021); Marinaro v Reynolds, 152 AD3d 659, 660-661 (2d Dept 2017); Carillo, 131 AD3d at 664; Lee v Bethel First Pentecostal Church of Am., 304 AD2d 798, 799-800 (2d Dept 2003); cf. Bacova v Paramount Leasehold, L.P., — AD3d —, 2024 NY Slip Op 00044, *1 (1st Dept 2024); Agosto v Museum of Modern Art, 219 AD3d 674, 676 (2d Dept 2023). Plaintiffs failed to present any evidence addressing this issue, therefore Defendant Howell is entitled to dismissal of Plaintiffs' common-law negligence and Labor Law § 200 causes of action. 
The City Defendants failed to demonstrate that they did not cause or create a dangerous condition by placing the bricks and mortar in the duct or that they were not aware that such was done on their behalf. In support of their contention that they did not create the condition, the City Defendants rely Kelly Burns' affidavit, who asserts that she conducted a "diligent" search of public records and those in the possession of Defendant HHC relating to the Hospital that yielded no records that HHC ever performed any work on the duct in question or that anyone acting on its behalf placed the bricks in the duct[FN26]
. The City Defendants failed to offer evidence suggesting they ceded control of the duct to a third-party. In view of their ostensible control of the duct and the incident room(s), the City Defendants failed to demonstrate as a matter of law that, despite the absence of records relating to work involving the bricks, they did not perform the work placing the bricks in the duct or had knowledge that a third-party performed such work on their behalf. See Quinones v City of New York, 105 AD3d 932, 933 (2d Dept 2013); Stickles v Fuller, 9 AD3d 599, 600-601 (3d Dept 2004); see also Marinaro v Reynolds, 152 AD3d 659, 661-662 (2d Dept 2017); Greenidge v HRH Constr. Corp., 279 AD2d 400, 401-403 (1st Dept 2001); Payless Discount Ctrs. v 25-29 N. Broadway Corp., 83 AD2d 960, 960-961 (2d Dept 1981)[FN27]
. If the City Defendants [*8]placed the bricks in the duct or had knowledge that they were placed by someone else, they would have had a duty to warn of the latent dangerous condition presented by the bricks contained in the duct. See Galindo v Town of Clarkstown, 2 NY3d 633, 636 (2004); Breau v Brudick, 166 AD3d 1545, 1546-1547 (4th Dept 2018)[FN28]
.
Accordingly, the City Defendants failed to demonstrate they did not cause or create the dangerous condition warranting denial of this branch of their motion, to wit dismissal of Plaintiffs' common-law negligence and Labor Law § 200 causes of action premised on a dangerous property condition theory of liability. 
Indemnification and Insurance Issues
Turning to the City Defendants' indemnification claims against Defendant Howell. The relevant indemnity provision contained in TDX's contract with Defendant Howell broadly provides for indemnification of the City Defendants for personal injury claims arising out of the work[FN29]
. [*9]Contrary to Defendant Howell's contention, the provision in the first paragraph of the contract is not conditioned on a finding of negligence by Defendant Howell. Although a separate indemnity provision in the second paragraph of Article 11[FN30]
 contains no requirement that a claim arise out of Defendant Howell's work and conditions indemnification upon a showing of "negligence, alleged negligence or failure to act," nothing in the language of this second paragraph suggests that it is intended as a limitation on terms of the first paragraph. 
Defendant Howell also relies upon indemnification provisions contained in the "Terms and Conditions" section appended to the TDX Subcontract that require a showing of negligence (Terms and Conditions §§ 7.1.1, 7.1.3)[FN31]
. The City Defendants indicated that Defendant Howell did not exchange these "Terms and Conditions" during discovery and the Court finds Defendant Howell did not provide or point to evidence authenticating the same. See Dorset v 285 Madison Owner LLC, 214 AD3d 402, 403 (1st Dept 2023); Andriienko v Compass Group USA, Inc., 174 AD3d 558, 560 (2d Dept 2019). Even if the Terms and Conditions were considered, its provisions requiring indemnification based upon Defendant Howell's "negligence," "fault" or "default", do not conflict with the provisions of the TDX Subcontract. See Tkach v City of New York, 278 AD2d 227, 229 (2d Dept 2000). Moreover, there is no language in TDX Subcontract or the Terms and Conditions suggesting that its provisions would take precedence over those in the TDX Subcontract. Cf. Gluck v Wai-Shing Li, 186 AD3d 460, 463 (2d Dept 2020). In addition, the Terms and Conditions are not identified as an addenda or rider to the TDX Subcontract, and nothing in the language or format of the TDX Subcontract and the Terms and Conditions suggests that they are akin to a typewritten rider to a form agreement, the terms of which would control over the those of the preprinted form. Cf. Home Fed. Sav. Bank v Sayegh, 250 AD2d 646, 647 (2d Dept 1998).
Since Plaintiffs' claim arises from Defendant Howell's work that it subcontracted to Defendant [*10]Unitech[FN32]
, the broad indemnification requirements of the first paragraph of Article 11 are applicable for injury to an employee of one of Defendant Howells' subcontractors[FN33]
. However, given that there are factual issues with respect to the City Defendants' own negligence, their motion for summary judgment on their contractual indemnification claim must be denied. See Rodriguez v Waterfront Plaza, LLC, 207 AD3d 489, 491 (2d Dept 2022); Crutch v 421 Kent Dev., LLC, 192 AD3d 977, 982 (2d Dept 2021); General Obligations Law § 5-322.1[FN34]
.
Regarding the City Defendants and Defendant Howell's contractual indemnification claims against Defendant Unitech, Defendant Howell's contract with Unitech broadly requires it to indemnify the City Defendants and Defendant Howell for claims arising out of Defendant Unitech's work[FN35]
. Contrary to Defendant Unitech's contention, the provision applies since Plaintiff Macancela, a Unitech employee, was injured performing work under Unitech's contract with Defendant Howell even though Unitech's work did not include the removal of the duct at issue. See Brown, 76 NY2d at 178; O'Connor, 58 NY2d at 657-658; Madkins, 191 AD3d 434, 436 (1st Dept 2021); Tkach, 278 AD2d at 229. The City Defendants' motion must be denied in view of the [*11]factual issues relating to their own negligence. See Rodriguez, 207 AD3d at 491; Crutch, 192 AD3d at 982; General Obligations Law § 5-322.1. Since Defendant Howell demonstrated it was not negligent, it is entitled to contractual indemnification from Defendant Unitech. See Martinez v 281 Broadway Holdings, LLC, 183 AD3d 716, 718 (2d Dept 2020); Bellreng, 108 AD3d at 1031. 
This constitutes the Decision and Order of the Court.
Date: September 10, 2024
Brooklyn, New York
Hon. Patria Frias-Colón, J.S.C.

Footnotes

Footnote 1: Plaintiff Jazmine Gomez Martes' claims are derivative only. 

Footnote 2: Coney Island Hospital is now known as South Brooklyn Health Ruth Bader Ginsburg Hospital. 

Footnote 3: NYSCEF Doc. 317 at p. 25.

Footnote 4: Id. at pp. 27-28.

Footnote 5: Id. at pp. 54-58.

Footnote 6: Id. at p.68.

Footnote 7: NYSCEF Doc. 195 at pp. 84-85.

Footnote 8: NYSCEF Doc. 195 at pp. 87-88

Footnote 9: Id. at pp. 89-90.

Footnote 10: Id. at pp. 98-101.

Footnote 11: NYSCEF Doc. 197 at pp. 102-103.

Footnote 12: NYSCEF Doc. 317 at pp. 43-44.

Footnote 13: Id. at pp. 99-100.

Footnote 14: Id. 

Footnote 15: As is relevant here, Labor Law § 240(1) provides: "All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."

Footnote 16: Narducci, 96 NY2d at 268.

Footnote 17: Outar v City of New York, 5 NY3d 731, 732 (2005); see Quattrocchi v F.J. Sciame Constr. Corp., 11 NY3d 757, 758 (2008).

Footnote 18: Narducci, 96 NY2d at 268; see Fabrizzi, 22 NY3d at 663; Wilinski, 18 NY3d at 10-11.

Footnote 19: See Marin v AP-Amsterdam 1661 Park LLC, 60 AD3d 824, 825 (2d Dept 2009); see also Narducci, 96 NY2d at 268; Cruz v 451 Lexington Realty, LLC, 218 AD3d 733, 736 (2d Dept 2023); Flossos v Waterside Redevelopment Co., L.P., 108 AD3d 647, 650 (2d Dept 2013); cf. Ravinov v Popeye's, 68 AD3d 1085, 1085 (2d Dept 2009).

Footnote 20: See Carlton v City of New York, 161 AD3d 930, 932 (2d Dept 2018); McLean v 405 Webster Ave. Assoc., 98 AD3d 1090, 1095-1096 (2d Dept 2012); Buckley v Columbia Grammar & Preparatory, 44 AD3d 263, 268-271 (1st Dept 2007), lv denied 10 NY3d 710 (2008)

Footnote 21: See Mena v 485 Seventh Ave. Assoc. LLC, 199 AD3d 420, 421 (1st Dept 2021); Clemente v 205 W. 103 Owners Corp., 180 AD3d 516, 517 (1st Dept 2020); Carrillo v Circle Manor Apts., 131 AD3d 662, 662-663 (2d Dept 2015), lv denied 27 NY3d 906 (2016); Romeo v Property Owner (USA) LLC, 61 AD3d 491, 491 (1st Dept 2009); Shipkoski v Watch Case Factory Assoc., 292 AD2d 587, 588-589 (2d Dept 2002).

Footnote 22: NYSCEF Doc. 300 at pp. 42-44

Footnote 23: Id.

Footnote 24: NYSCEF Doc. 200.

Footnote 25: NYSCEF Doc. 202.

Footnote 26: The Court notes that Burns stated that the Hospital was built in 1954, 15 years before HHC was created to operate City hospitals (L 1969, ch 106; Unconsolidated Laws § 7386 [1]), but failed to address whether the records she reviewed included the City's records relating to the Hospital before HHC assumed its operation.

Footnote 27: Marinaro, Greenidge, and Payless Discount Ctrs. address the doctrine of res ipsa loquitur, which Plaintiff has not argued is applicable here. However, the discussion of Defendants' control over the subject areas in those cases, demonstrate it is central to allowing the inference of negligence that applies under the doctrine even when the condition is latent (see Marinaro, 152 AD3d at 660-662). In view of the rationale for the doctrine, a parties' control of a premises may warrant an inference that it is aware of the work performed thereon despite the absence of records relating to such work. See Greenidge, 279 AD2d at 402-403; see also Stickles, 9 AD3d at 600-601).

Footnote 28: The City Defendants make no argument that they may avoid liability because the accident arose from a condition that Plaintiff undertook to fix or arose from a danger inherent in the work itself. In any event, the City Defendants would not prevail had they made such an argument because Plaintiff Macancela's work did not involve the removal of the duct (cf. Rendon v Callahan, 206 AD3d 945, 947 [2d Dept 2022]), and the City Defendants' own expert asserts that it was the bricks inside the duct that presented the danger and there was no reason to believe that the duct needed to be supported while the wall was being removed (cf. Gasper v Ford Motor Co., 13 NY2d 104, 110-111 [1963]; Villanueva v 114 Fifth Ave. Assoc. LLC, 162 AD3d 404, 406 [1st Dept 2018]).

Footnote 29: Relevant here is Article 11 of TDX's contract, which provides: "To the fullest extent permitted by law, the CONTRACTOR agrees to indemnify, defend and hold harmless the Owner, NYCEDC and CONSTRUCTION MANAGER, as well as all parties listed above as additional insureds, their officers, directors, agents, employees and partners (hereafter collectively "Indemnitees") from any and all claims, suits, damages, liabilities, professional fees, including attorneys' fees, costs, court costs, expenses and disbursements related to death, personal injuries or property damage (including loss of use thereof) brought against any of the Indemnitees by any person or entity, arising out of or in connection with or as a result or consequence of the performance of the Work of the CONTRACTOR, as well as any additional work, extra work or add- on work, whether or not caused in whole or in part by the CONTRACTOR or any person or entity employed, either directly or indirectly by the CONTRACTOR including any SUBCONTRACTORS thereof and their employees. The parties expressly agree that this indemnification agreement contemplates 1) full indemnity in the event of liability imposed against the Indemnitees without negligence; and 2) partial indemnity in the event of any actual negligence on the part of the Indemnitees either causing or contributing to the underlying claim which negligence is expressly accepted from them CONTRACTOR's obligation to indemnify. Attorneys' fees, court costs, expenses and disbursements shall be defined without limit to include those fees, costs, etc. incurred in defending the underlying claim and those fees, costs, etc. incurred in connection with the enforcement of this Subcontract Agreement. Indemnification under this Agreement shall operate whether or not CONTRACTOR has placed and maintained the insurance required under this agreement." Although not expressly identified as indemnified parties in Article 11, the City Defendants are identified as additional insureds in Article 9(B)(4) and are thus beneficiaries of this indemnification provision. 

Footnote 30: This second paragraph of Article 11 provides; "In addition to any risks specifically assumed by CONTRACTOR under Articles 10 and 13 hereof, CONTRACTOR hereby agrees to indemnify and hold harmless the Owner and CONSTRUCTION MANAGER and all previously identified Additional Insureds, and their respective members, officers, employees, or representatives, against all claims arising out of the negligent acts, alleged negligent acts, or failure to act, by CONTRACTOR, and shall pay any judgment or expense, including interest, imposed against any of them for personal injury, wrongful death or property damage, and to defend and pay the costs and expenses thereof, of any action, proceeding or lawsuit brought against the parties indemnified and held harmless herein."

Footnote 31: NYSCEF Doc. 204.

Footnote 32: See Brown v Two Exch. Plaza Partners, 76 NY2d 172, 178 (1990); Mogrovejo v HG Hous. Dev. Fund Co., Inc., 207 AD3d 461, 463-464 (2d Dept 2022); Bellreng v Sicoli & Massaro, Inc., 108 AD3d 1027, 1031 (4th Dept 2013).

Footnote 33: See Brown, 76 NY2d at 178; O'Connor v Serge El. Co., 58 NY2d 655, 657-658 (1982); Madkins v 22 Little W. 12th St., LLC, 191 AD3d 434, 436 (1st Dept 2021); Tkach, 278 AD2d at 229.

Footnote 34: Although the first paragraph language allows for partial indemnification of the indemnitees in the event they are negligent (see Brooks v Judlau Contr., Inc., 11 NY3d 204, 208-211 [2008]), there is no suggestion on the record here that any party, other than the City Defendants, was negligent; as such, unless the City Defendants are found not negligent, they would be responsible for a 100% of the negligence. There is no basis to grant the City Defendants partial summary judgment conditioned on a percentage of negligence finding by the jury (cf. Dejesus v Downtown Re Holdings LLC, 217 AD3d 524, 527 [1st Dept 2023]). 

Footnote 35: The relevant provision provides: "To the maximum and fullest extent permitted by law, Subcontractor hereby assumes entire responsibility and liability (which includes the indemnification of Contractor and all indemnities) for any and all damages and expenses or injury of any kind or nature whatsoever (including death resulting therefrom) to all persons, whether employees of the Subcontractor whose injuries occurred while being on the jobsite, working at the jobsite or otherwise, and to all property, caused by, resulting from, arising out of, or in any way occurring directly or indirectly or in any manner connected with Subcontractors Work or while being on the project site and that of its sub-subcontractors, vendors, suppliers and materialmen, the design and execution of the Work, or the Subcontractor's failure to perform any of his obligations under the Subcontract Documents provided for in this Subcontract, including delegable or nondelegable duties imposed by law." Paragraph F to Rider 6 of the subcontract specifically identifies Defendants E.W. Howell, the City and HHC as indemnities within the meaning of the subcontract.