**Villanueva v J.T. Magen & Co. Inc.**

2025 NY Slip Op 31461(U)

April 24, 2025

Supreme Court, New York County

Docket Number: Index No. 155823/2020

Judge: David B. Cohen

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     HON. DAVID B. COHEN                           PART                    58

*Justice*

-------------------------------------------------------------------------------X

CARLOS VILLANUEVA,

                                Plaintiff,

                        - v -

J.T. MAGEN & COMPANY INC., NORDSTROM, INC.,
BROADWAY 57TH/58TH RETAIL INVESTOR, LLC, 1790
BROADWAY ASSOCIATES LLC and ULM I HOLDING
CORP.,

                           Defendants.

-------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 155823/2020 |
| MOTION DATE | 10/29/2024 |
| MOTION SEQ. NO. | 003 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 003) 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130

were read on this motion for                              SUMMARY JUDGMENT                              .

      In this Labor Law action, plaintiff moves, pursuant to CPLR 3212, for partial summary judgment on the issue of liability under Labor Law § 240(1) as against defendants J.T. Magen & Company, Inc. (J.T. Magen), Nordstrom, Inc. (Nordstrom), Broadway 57th/58th Retail Investor, LLC (Broadway), and ULM I Holding Corp. (ULM) and to set this matter down for an assessment of damages.  Defendants oppose.

## BACKGROUND

      This action arises out of an accident that occurred on May 1, 2019 on the sixth floor of the Nordstrom Building located at 225 West 57th Street in Manhattan (premises) (NY St Cts Elec Filing [NYSCEF] Doc No. 84, verified complaint ¶ 7).  Broadway owned the premises on the date of the accident (NYSCEF Doc No. 85, verified answer ¶ 8), and retained J.T. Magen as a contractor on the Nordstrom Manhattan Flagship project (NYSCEF Doc No. 88).  By purchase

**155823/2020   VILLANUEVA, CARLOS vs. J.T. MAGEN & COMPANY INC.**
Motion No.  003

**Page 1 of 13**

order, J.T. Magen retained plaintiff's employer, JPR Mechanical, to perform HVAC and mechanical work on the project (NYSCEF Doc No. 90).

Plaintiff testified at his deposition that on May 1, 2019, he was working for JPR on the Nordstrom Building project (NYSCEF Doc No. 94, plaintiff tr at 18-19). That day, plaintiff's foreman instructed plaintiff and his coworkers to transport ducts from the hoist on the sixth floor to the machine room (*id.* at 51, 59). They were going to move two sections of duct that were stacked on two wheeled dollies (*id.* at 57, 58), with each duct weighing about 350 pounds and measuring 48-inches tall, 78-inches wide, and 60-inches long (*id.* at 56, 60). When stacked together, the ducts measured approximately eight-and-a-half feet above the ground (*id.* at 57).

The ducts were not strapped together or secured in any way to the dollies (*id.* at 57, 59). Plaintiff was going to move the dollies with two coworkers (*id.* at 52, 65, 66). Plaintiff was in front of the dollies, a coworker was on the side, and the other coworker was pushing the dollies from the back (*id.* at 65). Plaintiff's accident happened in an open area, while he had both hands on the bottom section of the duct (*id.* at 71, 72). As they were turning a corner, "the top duct came towards [plaintiff]" (*id.* at 20, 70). He tried to stop the duct from falling, but the duct was too heavy, and plaintiff and the duct fell to the floor (*id.* at 20, 67, 72). Plaintiff testified that "those ducts should never have been stacked one on top of the other because they are too heavy" (*id.* at 73). He believed that the accident happened because the ducts "were not tied together one to the other" (*id.* at 74).

Plaintiff's coworker avers that the ducts were double-wall, machine-room ducts weighing over 800 pounds, and that they were double-stacked about five-and-a-half feet tall and were placed on two dollies (NYSCEF Doc No. 98, Albi aff, ¶ 3). According to the coworker, the ducts were not strapped together or secured to the dollies in any way (*id.*, ¶ 4). He was behind

**155823/2020   VILLANUEVA, CARLOS vs. J.T. MAGEN & COMPANY INC.**
  **Motion No.  003**

**Page 2 of 13**

2 of 13

[* 2]

the duct pushing the dolly and plaintiff was in front steering the load (*id.*). As the workers made a right turn with the dollies, one of the dollies shifted and the top duct began to fall (*id.*). Plaintiff grabbed the duct to try to stop it from falling and hitting him, but it was too heavy (*id.*, ¶ 6). Plaintiff and the duct fell to the ground (*id.*).

Philip Giuffre (Giuffre), plaintiff's foreman, avers that plaintiff told him on the accident date that he had been injured in the manner to which he testified at his deposition (NYSCEF Doc No. 110, Giuffre aff, ¶ 4). Giuffre states that all employees were instructed to secure all ducts to their dollies before attempting to move them, and "[t]here were ample straps, ropes, and harnesses available on site in the shanty which could be used for these purposes" (*id.*, ¶ 6). Giuffre states that he does not know why plaintiff moved the dollies without properly securing the ducts, and nobody told plaintiff or his coworkers that they needed to rush to finish the task (*id.*).

J.T. Magen was a general contractor on the project, and its site superintendent testified that if workers were transporting double-stacked ducts, they should have been secured in some manner (NYSCEF Doc No. 95). J.T. Magen's senior project manager testified that "[a]ny item has to be secured together at a minimum and secured to the means by which you are moving them" (NYSCEF Doc No. 96).

Nordstrom's senior project manager for design and construction testified that he believed that Nordstrom owned Broadway (NYSCEF Doc No. 97), and that he "associate[d] [Broadway and Nordstrom] together" (*id.* at 38).

A C-3 report dated June 19, 2019, signed by plaintiff, states that plaintiff was injured while "lifting heavy duct work @ work" (NYSCEF Doc No. 111).

**155823/2020   VILLANUEVA, CARLOS vs. J.T. MAGEN & COMPANY INC.**
**Motion No.  003**

**Page 3 of 13**

3 of 13

[* 3]

A Workers' Compensation Board first report of injury form indicates that "IW ALLEGES WAS LIFTING HEAVY DUCT WORK WHEN HURT BACK AND RIGHT LEG" (NYSCEF Doc No. 112).

Dr. Edwin Perez examined plaintiff on June 17, 2019, and a report from that examination and a C-4 initial report of injury both state that plaintiff was injured "when he was doing some very heavy lifting at work, over 150 pounds and he hurt his back" (NYSCEF Doc No. 113; NYSCEF Doc No. 114).

A report dated August 1, 2019 from Rehabilitation Medicine Center of New York states that "while lifting something, [plaintiff] injured his back" (NYSCEF Doc No. 115). A C-4 initial report of injury, apparently completed by Ashley Simela, D.O. of Rehabilitation Medicine Center of New York, states that plaintiff "states that he was doing heavy lifting at work and injured his low back" (NYSCEF Doc No. 116).

Dr. Elizabeth Morrison examined plaintiff on November 15, 2019, October 16, 2020, and on February 5, 2021 (NYSCEF Doc Nos. 118-120). Reports from those visits state that:

> "[t]he claimant states that he was lifting along with two co-workers a 'sound proof' duct that weighed approximately 300 pounds. He states that the duct on their shoulders started to rotate off their grip. He attempted to reposition himself to re-establish control and in the process states injuries to his low back area right leg" (*id.*).

A Gotham City Orthopedics report dated June 7, 2021 states that plaintiff was injured "when he was lifting a 300 pound duct and experienced low back pain" (NYSCEF Doc No. 121).

## DISCUSSION

It is well settled that "[t]he proponent of summary judgment must establish its defense or cause of action sufficiently to warrant a court's directing judgment in its favor as a matter of law" (*Ryan v Trustees of Columbia Univ. in the City of NY, Inc.*, 96 AD3d 551, 553 [1st Dept

**155823/2020  VILLANUEVA, CARLOS vs. J.T. MAGEN & COMPANY INC.**
**Motion No.  003**

**Page 4 of 13**

4 of 13

[* 4]

2012] [internal quotation marks and citation omitted]). "Thus, the movant bears the burden to dispel any question of fact that would preclude summary judgment" (*id.*). "Once this showing has been made, the burden shifts to the nonmoving party to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact that require a trial for resolution" (*Giuffrida v Citibank Corp.*, 100 NY2d 72, 81 [2003]).

Plaintiff argues that defendants violated Labor Law § 240(1), as he was injured when the unsecured ducts fell onto him due to the lack of safety devices, and that they should have been secured for the purposes of the undertaking.

Defendants argue that there are questions of fact as to the manner in which the accident happened, and whether section 240(1) was violated. They observe that plaintiff's workers' compensation and medical records reflect that plaintiff reported a different version of the accident (that he got hurt while lifting ductwork), which does not implicate a statutory violation of section 240(1), and they submit that plaintiff's pre-litigation reporting of the accident is inconsistent with his claims in this action. Defendants also maintain that the version of the accident provided to Dr. Morrison suggests a cause of the accident for which they would not be liable. In any event, defendants assert, based on Giuffre's affidavit, that plaintiff was the sole proximate cause of his accident and a recalcitrant worker because he did not use available straps to secure the ducts before moving them.

In reply, plaintiff argues that all of the sworn testimony confirms the undisputed facts, and defendants only rely on hearsay in an attempt to raise an issue of fact. Plaintiff further contends that the court should not consider Giuffre's affidavit because defendants never disclosed him as a witness. Furthermore, plaintiff insists that defendants have failed to show that

**155823/2020   VILLANUEVA, CARLOS vs. J.T. MAGEN & COMPANY INC.**
     **Motion No.  003**

**Page 5 of 13**

plaintiff was the sole proximate cause of his accident or a recalcitrant worker, as Giuffre does not state where the straps were located, and plaintiff did not ignore any immediate safety instruction.

Labor Law § 240(1), commonly known as the Scaffold Law, provides, in relevant part, as follows:

> All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect or cause, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

Under the Scaffold Law, "[l]iability is contingent upon the existence of a hazard contemplated in § 240(1) and a failure to provide, or the inadequacy of, a safety device of the kind enumerated in the statute" (*Fernandez v BBD Developers, LLC*, 103 AD3d 554, 555 [1st Dept 2013]). "[T]he single decisive question is whether plaintiff's injuries were the direct consequence of a failure to provide adequate protection against a risk arising from a physically significant elevation differential" (*Wilinski v 334 E. 92nd Hous. Fund Corp.*, 18 NY3d 1, 10 [2011] [internal quotation marks, citation, and emphasis omitted]). Stated differently, "[i]n the context of falling objects, the risk to be guarded against is the unchecked or insufficiently checked descent of the object" (*Arnaud v 140 Edgecomb LLC*, 83 AD3d 507, 508 [1st Dept 2011]; *see also Apel v City of New York*, 73 AD3d 406, 406 [1st Dept 2010]).

"Falling object" liability under section 240(1) is not limited to cases in which the falling object is being hoisted or secured (*see Quattrocchi v. F.J. Sciame Constr. Corp.*, 11 NY3d 757, 758-759 [2008] [internal quotation marks omitted]), but also where, at the time the object fell, it "required securing for the purposes of the undertaking" (*Fabrizi v 1095 Ave. of the Ams., L.L.C.*, 22 NY3d 658, 663 [2014] [internal quotation marks omitted]). "[I]n order to recover under

**155823/2020   VILLANUEVA, CARLOS vs. J.T. MAGEN & COMPANY INC.**
**Motion No.  003**

**Page 6 of 13**

6 of 13

[* 6]

section 240 (1), the plaintiff must establish that the statute was violated and that such violation was a proximate cause of his injury" (*Barreto v Metropolitan Transp. Auth.*, 25 NY3d 426, 433 [2015], *rearg denied* 25 NY3d 1211 [2015]).

However, "where a plaintiff's own actions are the sole proximate cause of the accident, there can be no liability" (*id.*, quoting *Cahill v Triborough Bridge & Tunnel Auth.*, 4 NY3d 35, 40 [2004]). Specifically,

> "A defendant has no liability under Labor Law § 240 (1) when plaintiffs: (1) 'had adequate safety devices available,' (2) 'knew both that' the safety devices 'were available and that [they were] expected to use them,' (3) 'chose for no good reason not to do so,' and (4) would not have been injured had they 'not made that choice'" (*Biaca-Neto v Boston Rd. II Hous. Dev. Fund Corp.*, 34 NY3d 1166, 1167 [2020], quoting *Cahill,* 4 NY3d at 40).

Nevertheless, "[t]he mere presence of [safety devices] somewhere at the worksite does not establish 'proper protection'" (*Zimmer v Chemung County Performing Arts*, 65 NY2d 513, 524 [1985], *rearg denied* 65 NY2d 1054 [1985]).

Furthermore, a plaintiff is not entitled to recover under section 240(1) where the plaintiff is a recalcitrant worker, i.e., "intentionally disregards [a] specific safety instruction" (*Loaiza v Museum of Arts & Design*, 228 AD3d 511, 512 [1st Dept 2024]; *see also Jerdonek v 41 W. 72 LLC*, 143 AD3d 43, 46 [1st Dept 2016]; *Balthazar v Full Circle Constr. Corp.*, 268 AD2d 96, 99 [1st Dept 2000] ["A Labor Law § 240 (1) claim will be dismissed where the plaintiff disobeyed an 'immediate and active direction' not to use a particular unsafe piece of equipment, and refused to use adequate safety devices when such were provided"]).

A.    Entity liability

As a preliminary matter, the court notes that it is undisputed that J.T. Magen was the general contractor on the project and hired subcontractors to perform the work, and thus J.T. Magen may be held liable under section 240(1) (*see Ajche v Park Ave. Plaza Owner, LLC*, 171

**155823/2020   VILLANUEVA, CARLOS vs. J.T. MAGEN & COMPANY INC.**
**Motion No.  003**

**Page 7 of 13**

AD3d 411, 413 [1st Dept 2019] [entity could be held liable as a general contractor where it "oversaw the entire construction project, and coordinated [plaintiff's employer's] work with the other trades"]).

Moreover, defendants admitted that Broadway owned the premises on the date of the accident, and therefore, Broadway may also be held liable under section 240(1) (*see Cornell v County of Monroe*, 158 AD3d 1151, 1153 [4th Dept 2018] [internal quotation marks and citations omitted] ["well settled that [f]acts admitted by a party's pleadings constitute judicial admissions and that [f]ormal judicial admissions are conclusive of the facts admitted in the action in which they are made"]).

Plaintiff asserts that Nordstrom is liable under Labor Law § 240(1) as an owner. "Courts have held that the term 'owner' is not limited to the titleholder of the property where the accident occurred and encompasses a [party] 'who has an interest in the property and who fulfilled the role of owner by contracting to have work performed for [its] benefit'" (*Scaparo v Village of Ilion*, 13 NY3d 864, 866 [2009], quoting *Copertino v Ward*, 100 AD2d 565, 566 [2d Dept 1984]). "'[The owner] is the party who, as a practical matter, has the right to hire or fire subcontractors and to insist that proper safety practices are followed'" (*Guryev v Tomchinsky*, 87 AD3d 612, 614 [2d Dept 2011], *affd* 20 NY3d 194 [2012], quoting *Sweeting v Board of Coop. Educ. Servs.*, 83 AD2d 103, 114 [4th Dept 1981], *lv denied* 56 NY2d 503 [1982]).

Here, while Wilson testified that he understood that Nordstrom owns Broadway, he did not testify that Nordstrom had an interest in the premises or contracted for the work, or had the right to hire or fire subcontractors and insist that property safety practices were followed.

Furthermore, plaintiff has not articulated any arguments as to why ULM may be held liable under section 240(1). Accordingly, plaintiff has failed to meet his burden of establishing

**155823/2020   VILLANUEVA, CARLOS vs. J.T. MAGEN & COMPANY INC.**   **Page 8 of 13**
   **Motion No.  003**

8 of 13

that Nordstrom and ULM are proper Labor Law defendants here (*see Ryan v Trustees of Columbia Univ. in the City of NY, Inc.*, 96 AD3d 551, 553 [1st Dept 2012).

### B.    Violation of Labor Law 240(1)

As plaintiff testified that he was moving heavy ducts on dollies, that the ducts were not secured in any way and were stacked approximately eight-feet high, and that he was injured when he tried to prevent a duct from falling to the ground, he demonstrated that his "injuries were the direct consequence of a failure to provide adequate protection against a risk arising from a physically significant elevation differential" (*Wilinski*, 18 NY3d at 10 [internal quotation marks, citation, and emphasis omitted]).

He also established that the ducts "required securing for the purposes of the undertaking," especially as he and J.T. Magen's witnesses testified that the ducts should have been secured with a rope, strap or harness when they being moved on the dollies (*Outar v City of New York*, 5 NY3d 731, 732 [2005] [when subway worker was injured when an unsecured dolly, which was used in his work and was stored in a "bench wall," fell on him, "the dolly was an object that required securing for the purposes of the undertaking"]; *Taopanta v 1211 6th Ave. Prop. Owner, LLC*, 212 AD3d 566, 566 [1st Dept 2023] [plaintiff was injured while disposing of construction debris by lifting it onto a truck by hand when a several hundred pound glass and metal door being lifted fell causing plaintiff's hand to be crushed between the door and the truck and severing plaintiff's finger; plaintiff was entitled to summary judgment under section 240(1) where "[i]t is undisputed that no lifting devices contemplated by Labor Law § 240(1) were available at the job site and that plaintiff's injuries flow 'directly from the application of the force of gravity to the object' as he and his coworkers attempted to lift it into the truck by hand"] [internal quotation marks and citation omitted]; *Aramburu v Midtown W. B, LLC*, 126 AD3d 498,

**155823/2020   VILLANUEVA, CARLOS vs. J.T. MAGEN & COMPANY INC.**                    **Page 9 of 13**
**Motion No.  003**

9 of 13

[* 9]

499 [1st Dept 2015] [plaintiff was entitled to partial summary judgment under section 240(1) when he was injured while guiding a heavy reel of wire down a plywood ramp without any safety devices such as pulleys or ropes]).

However, defendants contend that other evidence indicates that plaintiff's accident occurred in a manner different than the way he described. "Where credible evidence reveals differing versions of the accident, one under which defendants would be liable and another under which they would not, questions of fact exist making summary judgment inappropriate" (*Ellerbe v Port Auth. of NY & N.J.*, 91 AD3d 441, 442 [1st Dept 2012]).

"Hearsay entries regarding the cause of an injury contained in a medical record come into evidence under the business records exception if they are germane to the treatment or diagnosis of plaintiff's injuries" (*Benavides v City of New York*, 115 AD3d 518, 519 [1st Dept 2014]). "Alternatively, the entry may be admissible as an admission, but only if there is evidence that connects the party to the entry" (*id.*).

The following documents constitute admissions by plaintiff as it is clear that he created the records and provided the information therein or the statements therein are directly attributable to him (*see Pina v Arthur Clinton Hous. Dev. Fund Corp.* 188 AD3d 614, 614 [1st Dept 2021] [concluding medical record entries containing description of accident satisfied party admissions exception because entries in records were directly attributable to plaintiff]):

(1)     The C-3 claim dated June 19, 2019, which was filled out and signed by plaintiff, wherein he twice states that he was injured by lifting (heavy) duct work;

(2)     The June 17, 2019 records of Dr. Edwin Perez, wherein he notes that plaintiff stated that  he was injured "when he was doing some very heavy lifting at work over 150 pounds of lifting and he hurt his back"; and

155823/2020   VILLANUEVA, CARLOS vs. J.T. MAGEN & COMPANY INC.
Motion No.  003

Page 10 of 13

(3)     A November 15, 2019 report of Dr. Elizabeth Morrison, in which she reports that plaintiff "states that he was lifting along with two co-workers a 'sound-proof' duct that weighed approximately 300 pounds.  He states that the duct on their shoulders started to rotate off their grip.  He attempted to reposition himself to re-establish control and in the process states injuries to his low back area right leg."

Other documents relied on by defendants are not admissible as they do not constitute admissions, nor are they germane to treatment:

(1)     First Report of injury (NYSCEF 112);

(2)     Doctor's Initial Reports (C-4) (NYSCEF 114; 116);

(3)     Rehabilitation Medicine Center of New York report dated August 1, 2019 (NYSCEF 115); and

(4)     A Gotham City Orthopedics report dated June 7, 2021 (NYSCEF 121).

The admissible records mentioned above reflect a description of the accident that is inconsistent with plaintiff's testimony and assertions here.  Even assuming that his accounts of "lifting" the heavy duct can be reconciled with his testimony that he was injured when he tried to prevent the duct from falling down, the statements he made to Dr. Morrison reflect a cause of the accident completely at odds with his testimony.  Specifically, the details of the accident that he gave Dr. Morrison – that he and his coworkers had lifted the duct and were carrying it on their shoulders when it started to shift – cannot be reconciled with his testimony.

While summary judgment may not be opposed solely by hearsay, here plaintiff's admissions constitute an exception to the hearsay rule and are competent evidence in opposition to a summary judgment motion (*see Matter of Newman*, 231 AD3d 12 [1st Dept 2024] [affidavits submitted in opposition to summary judgment which contained evidence of admissions by party

155823/2020   VILLANUEVA, CARLOS vs. J.T. MAGEN & COMPANY INC.
Motion No.  003

Page 11 of 13

11 of 13

were sufficient to raise triable issues as they represented competent evidence against party]; *Reid v Wells Fargo, N.A.*, 195 AD3d 647 [2d Dept 2021] [competent evidence presented by admissions against interest]).

There thus exists a triable issue as to the cause of the accident (*see Moore v Skanska USA Bldg., Inc.*, ___ AD3d ___, 2025 WL 1129160 [1st Dept 2025] [as defendants raised triable issues regarding plaintiff's version of events, conflicting accounts presented credibility issues for jury to resolve]; *Pina*, 188 AD3d at 614 [plaintiff's own conflicting accounts as to what caused accident and injury were sufficient to raise triable issue of fact]; *McCue v Cablevision Sys. Corp.*, 160 AD3d 595 [1st Dept 2018] [issues of fact existed as to how accident occurred]; *Smiegielski v Teachers Ins. and Annuity Assn. of Am.*, 137 AD3d 676 [1st Dept 2016] [issue of fact may be raised where plaintiff provides inconsistent accounts of accident]).

While plaintiff may have testified at his deposition through a translator, and stated that he only spoke "some English" (NYSCEF Doc No. 94, plaintiff tr at 42), there is no evidence that he was not the source of the information in the records or that he did not speak English well enough to fill out the forms or speak to the doctors. Notably, there is no indication in the medical records that plaintiff required or used a translator during the medical examinations.

In light of this result, there is no need to consider the parties' remaining arguments.

**155823/2020   VILLANUEVA, CARLOS vs. J.T. MAGEN & COMPANY INC.**
**Motion No.  003**

**Page 12 of 13**

## CONCLUSION

Accordingly, it is

**ORDERED** that plaintiff's motion for partial summary judgment is denied.

2025042416335CDDC0HEN718912E1C4AD4655A425525FEEA3DAD

| **4/24/2025** | | **DAVID B. COHEN, J.S.C.** |
| :---: | :---: | :---: |
| **DATE** | | |

| **CHECK ONE:** | | CASE DISPOSED | | **X** | NON-FINAL DISPOSITION | |
| :--- | :---: | :--- | :---: | :---: | :--- | :---: |
| | | GRANTED | DENIED | | GRANTED IN PART | **X** OTHER |
| **APPLICATION:** | | SETTLE ORDER | | | SUBMIT ORDER | |
| **CHECK IF APPROPRIATE:** | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

**155823/2020   VILLANUEVA, CARLOS vs. J.T. MAGEN & COMPANY INC.**
**Motion No.  003**

**Page 13 of 13**

13 of 13

[* 13]